GORDON (BROWNELL v.). See Case No. 2,039.

---

## Case No. 5,606.

### GORDON et al. v. COOLIDGE et al.

[1 Sumn. 537.] [1]

Circuit Court, D. Maine. May Term, 1833.

ASSIGNMENT FOR BENEFIT OF CREDITORS—ASSENT OF ASSIGNEE—ATTORNEY AND CLIENT—AUTHORITY—ASSENT OF CREDITORS — BY MAIL—WHEN COMPLETE (Quære).

1. An assignment was made by a debtor for the benefit of his creditors to two attorneys at law, who were partners in their business, as trustees; one of them assented to the assignment at the time, the other being absent. It was held, that the latter must be presumed to assent also, unless upon notice he refused to accept the trust, and notified it to the debtor; and especially if he and his partner proceeded to act under the assignment by a private conditional agreement between them, as to giving a priority to certain attachments made by them in favor of certain creditors, which agreement was unknown to the debtor. And it seems, that even if, under such circumstances, the priority could be held valid, the assignment would be an operative trust as to all other assenting creditors.

2. Attorneys at law, having confided to them by creditors a discretionary power to collect a debt, may in the exercise of their discretion assent to an assignment for the benefit of creditors, and bind their clients thereto, as within the scope of the authority thus confided to them.
[Cited in Clark v. Randall, 9 Wis. 138; Lockhart v. Wyatt, 10 Ala. 231.]

---

[1] [Reported by Charles Sumner, Esq.]

3. Where an assignment is made to two persons, one of whom accepts the trust, and the other repudiates it, the assignment is operative as to the assenting trustee, unless there is some condition in it, that it shall be void, unless assented to by both trustees.

4. It is not generally true, that persons sued as trustees under the foreign attachment act of Maine, are to be charged as such, unless they clearly discharge themselves upon their examination. On the contrary, the court can adjudge them trustees only, when upon the examination there is clear and determinate evidence, free from reasonable doubt, that they have property in their hands, of which they ought to be adjudged the trustees of the debtor.

5. When an assignment is made for the benefit of the creditors, and some of the creditors live at a distance, and signify their assent by letter through the post-office; Quaere, when is the assent complete? whether at the time, when the letter is put into the post-office, or when it reaches the assignees?

[This was a suit by George W. Gordon and his administrator against George S. Coolidge and his trustees.]

This case came before the court upon a disclosure of the trustees, McGaw and Hatch. The facts upon which it turns are as follows: McGaw and Hatch are attorneys at law and partners in business at Bangor. Previous to the month of October, 1831, Loring and Kupfer, of Boston, sent to McGaw and Hatch a note of the defendant, Coolidge, for $358.56 and interest, for collection. At the same time an account was forwarded to them by Bradley and Sigourney against Coolidge, for $460.30, for collection. McGaw and Hatch on the 4th of October caused writs to be made out on these demands, and delivered them to a deputy sheriff to be served whenever necessary. On the 5th of December, 1831, Rufus Dwinal, of Bangor, came to the office of McGaw and Hatch with a copy of a note of Coolidge, owing to Gilman and Pritchard of Boston, for $1271.25, and requested them, in behalf of Gilman, Pritchard, & Co., either to obtain security therefor, or its amount in goods. McGaw then told Hatch, that they must instantly secure the demands of Loring and Kupfer, and Bradley and Sigourney, to which Hatch assented. Hatch then went with Dwinal from the office, and called on Coolidge, who declined at first to pay the demand, or to give security; but afterwards, on the same day, he agreed to assign the whole of his stock of goods to McGaw and Hatch, to be disposed of by auction, and the proceeds to be applied in the order named in the assignment, provided Hatch would take the assignment. To this proposal Hatch agreed, with the consent of Dwinal; and an assignment was executed accordingly. McGaw was not present at these transactions. On the 6th of December McGaw was informed by Hatch of what he had done; and he then told Hatch, that their clients, Loring and Kupfer, and Bradley and Sigourney, must be provided for by attachments, and that they must not rely upon the assignment, unless they should be willing thereafterwards so to do; and then,

on notice, the attachments could be dissolved. The deputy sheriff made attachments accordingly on the 6th of December. McGaw further stated in his disclosure, that he did not consider the firm of McGaw and Hatch as embracing powers to become assignees, nor did it embrace such powers or objects; but he was willing, that the firm should be assignees of Coolidge, so far as might be done consistently with the existence of the attachments in favor of Loring and Kupfer, and Bradley and Sigourney, but not otherwise; and so he informed Hatch. Pursuant to the arrangements made on the assignment, the stock assigned was sold by an auctioneer, with the exception of the goods attached; and the proceeds (about $3864.80) were paid over to McGaw and Hatch. The suits on the attachments regularly proceeded to judgment and execution; and the deputy sheriff, after selling the goods attached, and satisfying the amount due on the executions, returned the surplus ($269.80) to McGaw and Hatch, who thus obtained in the whole about the sum of $4134.60, applicable to the purposes of the assignment.

A copy of the assignment is in the case, bearing date the 5th of December, 1831. After reciting, that Coolidge was indebted to Grant and Stone of Philadelphia, Loring and Kupfer, Bradley and Sigourney, Gilman, Pritchard, & Co., Copeland and Lovering, Gordon and Stoddard, Silas Pierce & Co., &c. &c., it proceeds to assign to McGaw and Hatch all his stock in goods at his store, &c., to be sold by Head and Pilsbury, (auctioneers,) on such terms as McGaw and Hatch shall direct; and the net proceeds of the goods are to be paid over to the creditors in the following order; and the transfer is made on that express condition; first, to pay Grant and Stone; secondly, to pay Loring and Kupfer; thirdly, to pay Bradley and Sigourney; fourthly, to pay Gilman, Pritchard, & Co.; and fifthly, if sufficient remains, to pay Copeland and Lovering; and the balance of the proceeds to be paid over to the remaining creditors in equal proportions, and if any thing afterwards remains, that is to be for the use of Coolidge. On the same paper under the same date is an acknowledgment of the delivery of the goods to sell and dispose of the same, agreeably to the intention of the above transfer; and it is signed by Hatch as follows, "McGaw and Hatch, attorneys for the creditors herein named." The explanation given by Hatch of this form of signature is, that at the time he considered McGaw and Hatch as attorneys of Loring and Kupfer, Bradley and Sigourney, and Gilman, Pritchard, & Co., and as attorneys to as many of the other creditors named in the assignment, as saw fit to become parties thereto, after notice of the same. None of the creditors by name signed or assented to the assignment, except Copeland and Lovering, who did so on the 12th of December, 1831, at 12 o'clock at noon, by a writing on the as-

signment, and Gilman, Pritchard, & Co., who did so by letter. The letter was dated at Boston on the 12th of December, 1831, and post-marked on that day, (in answer to a letter of McGaw and Hatch, sent on the 8th of the same month,) and was received by the latter in due course of mail, but not until after the attachment of the plaintiffs, which was on the 12th of December, at half past one o'clock at noon. There is no evidence to show at what time the letter was put into the post-office at Boston. McGaw and Hatch considered themselves as authorized to adjust Gilman, Pritchard, & Co.'s demand in any way they thought proper. The letter of the 12th of December says: "Your favor of the 8th is at hand. We accept of the assignment of George E. Coolidge, made in favor of his creditors. Yours, &c." In a subsequent letter of the 25th of December they fully confirm the proceedings of McGaw and Hatch.

The case was argued upon the point, whether the parties were trustees or not, by Deblois and Fessenden, for the plaintiffs, and by Sprague and Longfellow, for the trustees. For the plaintiffs were cited 5 Mass. 141; 6 Pick. 358; 11 Pick. 298; 6 Greenl. 381. For the trustees were cited Halsey v. Fairbanks [Case No. 5,964]; 8 Pick. 113. The points relied upon at the argument will be found fully stated in the opinion of the court.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice (after stating the facts). Such are the material facts apparent upon the disclosures of McGaw and Hatch. If the debts of Copeland and Lovering, and Gilman, Pritchard, & Co., can take effect under the assignment, the balance in the hands of the trustees is about $163.07; and this is subject to the claims for services of the assignees, McGaw and Hatch. If both of these debts are unpreferred, the plaintiffs have an ample security for their own debts; and if either of them is unpreferred, there will be a considerable balance in the hands of the trustees. Under these circumstances two points have been strenuously argued at the bar on behalf of the plaintiffs. The first is, that the assignment itself is utterly void, as to both the creditors. Secondly, that if good as to Copeland and Lovering, still the assent of Gilman, Pritchard, & Co., was not given, until after the attachment was made by the plaintiffs; and so they are cut off from any priority; and their claim must yield to the attachment.

Upon the first point the argument is, that the assignment was made to McGaw and Hatch for the benefit and payment of all the creditors named therein, in the order of preference stated, and upon that express condition; that McGaw never assented to the assignment absolutely, but only sub modo, excepting Loring and Kupfer, and Bradley

and Sigourney therefrom; that Coolidge never assented to this modification; and that without McGaw's assent to it the assignment could not take effect, as it was not within the scope of the business of the firm of McGaw and Hatch. And, then the argument proceeds upon the known principle, that a contract, to which both parties have not assented, is binding upon neither; and a modification, not assented to, leaves the original proposition a nullity, if the latter be not accepted.

There is no doubt, that it was not competent for McGaw and Hatch, without the assent of Coolidge, to accept the assignment in part, and reject it in part. If adopted by them at all, it must be deemed to be adopted in toto. They could not affirm it as to all the debts, except those of Loring and Kupfer, and Bradley and Sigourney, and disaffirm it as to the latter. And the real question is, whether the transaction has assumed this positive form, or is susceptible of and justifies another interpretation. In the first place, the assignment was actually executed, and assented to by Hatch on the 5th of December; and delivery was made to him under the assignment on the same day; and accepted by him on behalf of the creditors, for whom the firm, (as he says,) had been authorized to act, that is, for Loring and Kupfer, for Bradley and Sigourney, and for Gilman, Pritchard, & Co. It will, by and by, be considered, whether the firm had any such authority. Now, the assignment, having been accepted by Hatch on behalf of the firm, bound him at all events personally; and bound the firm also, unless, upon notice to McGaw, the latter dissented from the trust, and refused to accept it. It is said, that he did dissent, because he refused to accept the trust, unless the debts of Loring and Kupfer, and Bradley and Sigourney, were provided for under the attachments. But in point of fact McGaw never notified such dissent to any one, except Hatch. There is not the slightest proof, that he ever communicated the fact to Coolidge. But the firm, with McGaw's express assent and acquiescence, went on to sell the stock, and to act under the assignment; and they have received the proceeds of the sale. Under such circumstances no private reservation of this sort can possibly prevail over the facts of direct co-operation and action in the purposes of the assignment. If the ordering of the attachments was an act inconsistent with the nature and objects of the trust, that was a mere private act, not superseding the assignment, but simply in violation of its provisions; and as such, McGaw and Hatch might be liable for the breach of the trust in an action brought by Coolidge against them. But the creditors of Coolidge have no right or authority to avail themselves of it to overthrow the assignment. The assignment must stand, as valid, until McGaw had done some overt act, known to Coolidge, by which he has repudiated it. But in truth, McGaw's dissent was not to acting as an assignee under the trust; but his objection was to binding Loring and Kupfer, and Bradley and Sigourney, as creditors, to their remedy under the assignment. There is not a syllable in the assignment, which declares it void, unless all the creditors shall assent to it. On the contrary, the irresistible conclusion is, that it was to be held good pro tanto, as to all the creditors, who should assent, and void as to those who should not. Nor is there the slightest proof in the case, that Coolidge made it a condition of the assignment, that Loring and Kupfer, and Bradley and Sigourney, or either of them, should withdraw their intended attachments, or that McGaw and Hatch should assent on their behalf to the assignment, otherwise it should be void. How can the court infer such a condition without a scintilla of evidence to support it? And yet the basis of the argument of the plaintiffs rests here; for if these creditors were at liberty to adopt or reject the assignment at their pleasure, the act of their attorneys in rejecting it as to them, left the assignment in full force and vigor as to all other creditors, who should assent to it and take under it. It does not appear to me, therefore, that, upon the evidence, the court can judicially say, that McGaw ever intended to renounce the character of assignee, whatever may have been his intention, as to binding the creditors, who were his clients, by the assignment.

There are other intrinsic difficulties in this part of the plaintiffs' case. McGaw and Hatch insist, that they had full authority to bind all their clients by the assignment, if in their discretion they chose to exercise it. Nor do I perceive, how, upon the facts, this power can well be denied to them. The debts were confided to them for collection according to their discretion. And if they chose to take security, instead of enforcing an immediate collection by suits, it seems to me clear that they were at liberty so to do. And they might elect the security of a general assignment, if in the exercise of a sound discretion, that appeared to them to be the best course for their clients. There is no pretence to say, that any limitation was intended by the creditors upon their discretion. They were left with an implied general liberty to act in the premises, as they might deem best for the interests of their clients. Now, in the present case, they either undertook to bind their clients to the assignment, or they left them at liberty to accept or reject it. If the latter was the predicament, in which the assignment was understood by the parties to leave the creditors, then there is no pretence to say, that the subsequent attachment was incompatible with, or a breach of, the contract of assignment. If the former was the predicament, then the signature of Hatch, in the name of McGaw and Hatch, being given at the time

of the execution ·of the assignment, bound the creditors, who were their clients; and that consent so given became obligatory, and could not be afterwards retracted. There is no ground to say, that Hatch was not competent to bind the firm for such a purpose. It was clearly within the scope of the agency of partners authorized to collect and secure debts. And, I confess, the strong inclination of my opinion is, that the written acceptance and assent to the assignment by Hatch in the name of McGaw and Hatch, as attorneys of the creditors, admits of no other interpretation. It was an act binding on the creditors, who were their clients. It has never been repudiated by any of them. And I exceedingly doubt, if, in point of law, it was capable of being repudiated. If, then, the creditors were bound by it, the subsequent acts of McGaw and Hatch in proceeding on the attachments were unjustifiable, and irregular. These acts did not avoid the assignment. They simply gave a right of action to Coolidge, but not to any of his creditors, for redress for any injury he had sustained thereby. He seems not, as far as the evidence goes, to have made any complaint; and it is quite probable, that he has acquiesced in the attachments, as matter either of prior or subsequent arrangement, not injurious to his own interests.

There is yet another view of this point important in itself, and which might, under one aspect of the case, have a great influence upon the decision. The argument is, that, unless McGaw and Hatch both assented to the assignment, and to act as assignees, it was utterly void. But the argument is built on no fact in the case. It stands merely as a presumption from the absence of a contrary provision. Now, I cannot clearly see my way to adopt the argument. The assignment was made to a firm, as assignees, for the benefit of creditors. Hatch assented to it, and so bound himself, whether McGaw was bound or not. And, as Coolidge has not made it a condition, that both the assignees should accept, my judgment is, that the assignment, in the absence of all countervailing presumptions, vested the property in such assignee as should and did accept the trust. If a grant is made to two persons for their own benefit, I have never understood that it is void as to both, if not accepted by both. And where the grant is a mere trust for the benefit of third persons, there is still less reason to indulge in such a presumption. It is true, that if the intention of the parties is, that the assignment shall not be operative, unless all the assignees shall accept it, that intention ought to govern the case. But such an intention must clearly appear. It is not to be inferred from equivocal and doubtful circumstances, admitting of different interpretations. I see nothing in this case, which will enable the court to say, that Coolidge did not intend that the assignment should take effect, unless McGaw, as well as

Hatch, consented to act as assignee. In every view of the matter, my judgment is, that the assignment was not a void instrument; but that it took effect from the time of its delivery, a.· to all creditors, who assented to it before the attachment of the present plaintiff was made.

The other question is one of more nicety and difficulty. It is said, that where parties, summoned as trustees, fail to discharge themselves by any ambiguity in their disclosures, they are to be adjudged trustees. That proposition requires many qualifications, and may be true or not, according to circumstances. If upon the disclosure it is clear, that there are goods, effects, and credits of the debtor in the hands of a trustee; but it is uncertain by the disclosure, whether the goods, effects, or credits are affected by interests, liens, or claims of third persons or not, and the trustee has knowledge of all the facts and withholds them, or evades a full examination; that may furnish a good ground to presume every thing against him, so far as there are ambiguities. But if he fully and clearly discloses all he knows; and upon the whole evidence it is left in reasonable doubt, whether, under all the circumstances, he be trustee or not; in such a case, I apprehend, he is entitled to be discharged. A different doctrine would be most perilous to the supposed trustee; because he possesses no power to compel disclosures from third persons relative to the property; and no extraneous or collateral evidence of third persons is admissible in the suit, to establish or discharge his liability. It is to be decided solely and exclusively by his answers. He might, upon any other doctrine, be innocently compelled to pay over the same property twice to different persons, holding adverse rights, because he might be without any adequate means of self-protection. The law, therefore, will not adjudge him a trustee, except upon clear and determinate evidence drawn from his own answers. I am aware, that there are cases, which seem to inculcate a more rigid and severe doctrine; such as Sebor v. Armstrong, 4 Mass. 206, and Cleveland v. Clap, 5 Mass. 201; U. S. v. Langton [Case No. 15,560]. But they are perhaps explicable upon other grounds; and at all events, they do not, to my judgment, present such a direct authority as ought to overcome the doctrine already stated.

There are two points of view, under which the facts, in regard to the assent of Gilman, Pritchard, & Co., are presented by the argument. The first is, that there was an original assent at the time of the execution of the assignment by their agent, Dwinal, and by Hatch, as their attorney. The second is, that the assent of Gilman, Pritchard, & Co. is to be deemed complete and perfect from the moment the latter was put into the post-office at Boston; and as the letter was put into the post-office on the same day that the

attachment was made; and as the trustees have no means of ascertaining and stating with certainty, whether it was on that day before or after the time of the attachment; and as evidence aliunde is not admissible to establish it; the court ought not to adjudge the parties trustees, as they may thus be rendered twice responsible, if it shall hereafter be established, that the letter was in fact put into the post-office before the attachment.

This latter point involves questions of a good deal of nicety, upon which the authorities are not entirely agreed, and upon which much juridical astuteness of argument and opinion has been employed. Whether, then, the assent is to take effect from the moment when the letter is placed in the post-office; or from the time when the notice reaches the trustees, if the assent is not in the intermediate time withdrawn; whether, if not withdrawn, it relates back after notice to the period when first placed in the post-office; and whether, if the assent is once given, it can be withdrawn at any time before the letter reaches the trustees, by any intermediate though uncommunicated act;—these are questions admitting of no small scope of argument and observation. Merlin, in his Répertoire (title "Vente," § 1, art. 3, note 11, vol. 36, pp. 42, 50–54), to which I have been referred by my brother, the district judge, has given an elaborate pleading or argument on the subject, in which he has cited many of the continental authorities. It will well reward a diligent perusal. Then, there are the cases of Adams v. Lindsell, 1 Barn. & Ald. 681, and McCulloch v. Eagle Ins. Co., 1 Pick. 278, pressing on the same points. I am studious of avoiding any decision on these controverted matters, unless they are absolutely indispensable upon the present occasion. And it does appear to me, that we may dispose of the present case upon the first point already stated; that is, that Dwinal and Hatch had an original authority to assent to the assignment in virtue of the general implied power from Gilman, Pritchard, & Co. to Dwinal, "to obtain security for the note due to them, or its amount in goods," It is said, that there is no proof, that Dwinal had any such authority. But it appears to me, that under the circumstances the fair presumption is, that he had the authority. He acted as upon authority, and gave directions to the attorneys, and assented to the assignment; and the attorneys understood him to have full power, and governed themselves accordingly. There is no pretence to say, that Gilman, Pritchard, & Co. have ever repudiated his acts, or denied his powers, or treated him as a tortious interloper in their affairs. That he was an agent to collect their debt, or to secure it, does not seem susceptible of any doubt; and if an agent, we can not presume a limitation upon his agency inconsistent with his acts. There must be proof to establish that he has exceeded it.

The letter of Gilman, Pritchard, & Co. of the 12th of December, in reply to the statement of the proceedings in regard to the assignment, contains no expressions controlling the presumption of authority. They simply express their acceptance of the assignment, without a single intimation that Dwinal, or McGaw and Hatch, had acted against their instructions. And in a subsequent letter (of the 23d of December), written, indeed, after the attachment of the plaintiffs was known to them, but still evidence in the case, they say to McGaw and Hatch: "We consider, that we agreed to the assignment the moment it was made through yourselves, our agents." Now, the court are called upon to draw the conclusion from the mere deficiency of positive proof of an antecedent authority, that there was in fact none; and this conclusion is to be drawn against the direct statement of Hatch, that he supposed the firm of McGaw and Hatch fully authorized through Dwinal, and without any corroborative circumstances to fortify it. I cannot persuade myself, that, in a process of this nature, the court are to indulge in any such latitude of inference and conjecture. We ought to see clearly, that there was no such antecedent authority, in order to defeat the title under the assignment. If the disclosures leave the weight of presumption the other way, the court are bound to abstain from declaring the parties trustees in the suit, as to the sum retained for this particular debt. And this, upon the most mature reflection, is the judgment to which my mind has arrived.

The remaining consideration is, what deductions are to be allowed to the trustees from the small balance in their hands, for which they are liable to be adjudged trustees? That will require further interrogatories to be put to them on this point; and for this purpose, and for this only, should I be disposed to allow any further interrogatories. The district judge concurs in this opinion, and the cause will be disposed of accordingly.