STEPHEN JENNEY & *al. versus* WILLIAM DELESDERNIER.

A deputy sheriff who has been released by the sheriff is a competent witness in a suit against the sheriff for his default, notwithstanding his sureties may have given a new bond conditioned to indemnify the sheriff against the alleged default, to which his testimony applies.

The attorney of the plaintiff without any special authority therefor may approve of the receipt taken by the officer for personal property attached by him, and thereby relieve him from his obligation to retain and produce the property, that it may be taken in execution.

He may elect and control the remedy, and all the proceedings arising out of and connected with it, but he cannot release or discharge the cause of action, without receiving payment.

Though the attorney may conduct so indiscreetly, negligently or ignorantly, or may so abuse his trust as to be answerable to his client in damages, such conduct is not to prejudice the officer, who is entitled to regard him as the agent of his client in all the contingencies which may arise in the prosecution, and all the processes adopted to secure or collect the debt entrusted to his care.

A new trial will not be granted to enable a party to recover nominal damages.

THIS was an action, against the defendant, sheriff of the county of Washington, for the default of Thomas Skolfield, a deputy sheriff under him, in not safely keeping property attached and in releasing the same.

From the report of SHEPLEY J. before whom the cause was tried, it appeared in evidence that the plaintiff, on the 14th of Jan. 1836, sued out a writ of attachment against George I. Galvin, and delivered the same to said Skolfield for service, who, on the 15th of February following, returned thereon an attachment of a quantity of pork and flour of the value of $4000 ; that the action was duly entered, and that at June Term, 1838, judgment was obtained, and an execution issued thereon ; that within thirty days from the rendition of judgment the execution was placed in the hands of an officer, who seasonably made a demand on Skolfield, (who had ceased to be a deputy) but that the property was not delivered.

It appeared in evidence on the part of the defendant, that said Galvin proposed to the attorneys of the plaintiff that he would give a receipt for $4000, for property attached, and that

they should not attach any property of his to which the attorneys assented; that they informed the officer that they had agreed with Galvin, who should sign the receipt with him and the amount for which it should be given, and that they wrote the receipt and delivered the same to the officer, who procured it to be signed by the individual named by the attorneys. These facts were proved by the testimony of said Galvin and Skolfield, and there was opposing testimony thereto on the part of the plaintiffs.

The plaintiffs objected to the admission of said Skofield as a witness, but he having been released, was admitted to testify. After he had testified, the plaintiffs proved that the sureties on his official bond to the sheriff had made an arrangement with the sheriff, more than a year before the trial, and had given him a new bond with other sureties, to indemnify him against this suit. Skolfield was again called as a witness, and after proof of the above facts, he was again objected to as interested, and the objection was again overruled.

It appeared that all who signed the receipt were insolvent when judgment was rendered and still continue so. It also appeared that Skolfield retained the receipt until after a demand was made upon him for the property attached, and soon after sent it enclosed with a copy of his return to the plaintiffs attorneys.

On this testimony the jury were instructed that the testimony conclusively proved, that an attachment had been made to the amount of four thousand dollars; that if the plaintiffs by their attorneys agreed that no actual attachment of personal property should be made, provided a receipt for $4000 worth of property should be given, and so instructed the officer, and assented to and approved of the officer's taking the persons as receiptors who were taken, they being then in good credit, although they did not expressly agree to assume any responsibility as to the ability of the receiptors ultimately to pay the amount, the officer is excused from warranting their responsibility at the time judgment was recovered, and if he has acted faithfully and offered the receipt for the use of the plaintiffs,

Jenney v. Dolesdernier.

they would be justified under such circumstances in finding only nominal damages:—and if the plaintiffs, by their attorneys, did not assent to, and approve of the persons being taken as receiptors, who were taken, the deputy was bound to keep the property safely, or to take such persons as receiptors, as would at all events, be responsible, and the plaintiff would be entitled to recover four thousand dollars named as attached on the writ, and interest from the time of making a demand of the property.

The jury found a verdict for the defendant, which is to be set aside and a new trial granted, if these instructions were incorrect.

*Downes*, for the plaintiffs.   The deputy sheriff, Skolfield, returned an attachment of property.   He was improperly admitted, because he was interested, and because his testimony falsified his return, and proved that no attachment had ever been made.   *Gardner* v. *Hosmer*, 6 Mass. R. 327 ; *Purington* v. *Loring*, 7 Mass. R. 388 ; *Davis* v. *Maynard*, 9 Mass. R. 242 ; *Simmons* v. *Bradford*, 15 Mass. R. 84 ; *Wyer* v. *Andrews*, 1 Shep. 168.   The officer might have protected himself by returning the facts.   If the deputy was admissible, and his testimony was true, no defence was established.   The attorneys of the plaintiffs had no authority to give the directions which the deputy, Skolfield, testified to have been given.   It was not within the scope of their authority, as attorneys.   *Bank of Georgetown* v. *Geary*, 5 Pet. 113 ; *Jackson* v. *Bartlett*, 8 Johns. 366 ; *Langdon* v. *Potter*, 13 Mass. R. 319 ; *Buckland* v. *Conway*, 16 Mass. R. 396.   The verdict should be set aside.   The plaintiffs, at all events, were entitled to nominal damages.   *Weld* v. *Bartlett*, 10 Mass. R. 475 ; *Nye* v. *Smith*, 11 Mass. R. 188.

*T. J. D. Fuller* and *J. Granger*, for the defendant.   The deputy is only answerable for the non-performance of the duties enjoined by law.   The law did not require him to make a nominal attachment and take receiptors.   Whatever was done, was done at the request and by the procurement of the plain-

tiffs.   He acted solely on the condition that the responsibility of what might be done should rest on them.   The plaintiffs being parties to this arrangement, are bound thereby.   *Knowlton* v. *Bartlett*, 1 Pick. 271 ; *DeMoranda* v. *Duncan*, 4 T. R. 120 ; *Gorham* v. *Gale*, 7 Cow. 739.

The sheriff may show the property in another than the debtors, as whose it was attached.   *Learned* v. *Bryant*, 13 Mass. R. 224 ; *Fuller* v. *Holden*, 4 Mass. R. 498.   The plaintiffs are bound by the acts of their attorneys.   The Court will presume every thing done in pursuance of authority given, till the contrary appear.   *Gaillard* v. *Smart*, 6 Cow. 385.   The agreement made by the attorneys with the sheriff, is within the scope of their authority.   It commences with the suit, and terminates with the satisfaction of the judgment obtained.   The power of the attorney is more extensive over the debt than over the remedy.   The attorney in relation to the remedy cannot be controlled by the client.   Anon. 1 Wend. 108 ; *Holker* v. *Parker*, 7 Cranch, 436.   He may become a party to an assignment. *Gordon* v. *Coolidge*, 1 Sum. 537.   He may consent to a default, or to discontinuance, or he may enter a remittitur as to damages. *Earl of Yarmouth* v. *Russell*, 2 Ld. Raym. 1142.   He may direct as to the mode of enforcing an execution.   *Gorham* v. *Gale*, 7 Cow. 739.   He may compromise a debt.   *Holker* v. *Parker*, 7 Cranch, 436 ; *Georgetown Bank* v. *Geary*, 5 Pet. 99.   He may direct an attachment without directions from his client.   *Betts* v. *Norris*, 15 Maine R. 469.   He may direct what property, real or personal, shall be attached.   *Lynch* v. *Commonwealth*, 16 S. & R. 369.   If the attorney can direct an attachment, he can modify it, as in his judgment shall seem most for the interest of his clients, and they are bound thereby. The plaintiffs have no property in the goods attached.   They have only an inchoate right, which may or may not become perfected.   If an attorney can dissolve an attachment, as he may by entering a nonsuit, if he can discharge a party, much more should he be considered as having the powers exercised in this case.

The deputy was properly admitted as a witness. *Jewett* v. *Adams*, 8 Greenl. 30.

*Preble*, in reply. The officer in this case returned a certain attachment as made by him, but he does not return that a receipt was taken. His return leaves it in his own keeping. That return he cannot deny. If it cannot be denied directly, neither can it be denied indirectly. The return, with all its legal consequences, is binding on him. It may be contradicted by third persons, but not by the deputy or the sheriff. But the evidence received in effect contradicted the return, by shifting the legal responsibility from the sheriff to the receiptors, and by releasing the officer from the legal consequences arising from his return.

The attorneys had no authority to make the agreement testified to by Skolfield. The plaintiffs fully established their case. It was incumbent on the defendant then to establish his defence. He was bound not merely to prove the agreement but the authority to make it. None is shown, but that resulting from the relation of attorney and client, and that does not confer it. An attorney, though he may discontinue a suit, cannot discharge it. In the case of a discontinuance, the dissolution of the attachment is the act of the law, not of the attorney. The existence of the right contended for, cannot be inferred from the power of an attorney to refer a suit. A reference is, one of the modes recognized by law for the prosecution of the suit, and necessarily falls within the province of an attorney. But still the attorney can only refer *the* demand in suit. The attorney cannot release the debt. If not, can he release the officer from the responsibility the law throws upon him, and assume it himself in behalf of his client? The officer is not bound to take a receipt, and in taking one the risk is entirely his own. If he follows the directions of the attorney in taking one, he should see that the attorney can legally give such directions.

The opinion of the Court was by

SHEPLEY J. — The deputy of the defendant having been released by him was a competent witness. *Turner* v. *Austin*,

16 Mass. R. 185; *Jewett* v. *Adams*, 8 Greenl. 30.   The arrangements made between the sureties of the deputy and the defendant would not effect the rights of the deputy.   If the sureties in consequence of that arrangement, should pay to the defendant the amount, which he may be obliged to pay, if the plaintiffs should recover ; they would have no legal claim upon the witness; for they must fail to prove, that it was paid on account of any liability incurred by him.   His release would protect him against any such claim ; whether presented by them, or by the defendants.   It is said, that to permit him to testify is in effect to allow him to contradict his return.   That states the fact, that an attachment was made; and it is not contradicted, by stating the manner of making it, and that the property was at the same time left in the custody of the debtor, and his receipt, with sureties, taken for its safe keeping and delivery.   It would seem to come more nearly in conflict with the return to receive testimony, that the property attached was not the property of the debtor, but it has been decided that such testimony is admissible.   *Canada* v. *Southwick*, 16 Pick. 556.   This objection cannot prevail.

The principal question in the case is, whether the attorneys of the plaintiffs, without any special authority therefor, might approve of the receipt taken by the officer, and thereby relieve him, from his obligation to retain and produce the property, that it might be taken in execution.   The practice of law in this country, and especially in this part of it, is in several respects peculiar to our institutions and laws, and differs essentially from the English practice.   With us no warrant of attorney is required.   *Osborne* v. *The Bank of the United States*, 9 Wheat. 738.   The duties of barrister and attorney are united.   The extent of the authority cannot therefore be determined by any written evidence of it, but must be sought in the nature of the business to be performed.   Our laws authorizing an attachment and seizure of the debtor's property before judgment have given an additional remedy for the security and recovery of debts.   In making use of it the attorney of the creditor must exercise such authority as will enable him

Jenney *v.* Delesdernier.

to apply it with effect, and to control it so as to guard against its being made the occasion of injury instead of benefit to his client. When a creditor places a demand in the hands of an attorney for collection, the inference of law is, that he authorizes him to make use of such legal remedy and mode of proceeding, as may prove most effectual in accomplishing the object. The client is not supposed to be informed fully, what may be the best remedy or the safest mode of proceeding on it, and therefore to entrust these matters to his legal adviser. Hence it was to have been expected, that attorneys would feel authorized in such cases to issue a writ of attachment, if in their own judgment the most efficient remedy, and to order an attachment of the debtor's property to be made. By ordering an attachment he would be but making use of a remedy, which the law afforded to accomplish the object required of him. Accordingly it will be perceived in the reports of decided cases, that attorneys have been accustomed to order officers to make attachments of the debtor's property; and that the Courts have never questioned their power to do this; but have acted upon it as being effectual to control and bind the officer. The order for the particular property to be attached on the writ, *Goddard* v. *Turner*, which occasioned the suit of *Turner* v. *Augustine*, 16 Mass. R. 181, appears to have been made by an attorney; and it was contended, that the attachment was not effectual, but the authority of the attorney was not questioned. It directed certain property to be attached, not including the vessel in controversy, and the Court say, "a special direction may justify the officer in not going beyond it, but it does not deprive him of the authority to obey the command in the precept." Another instance of an attachment made by the order of an attorney is afforded in the case of *Gordon* v. *Jenney*, 16 Mass. R. 465. The several attachments named in the case of *Haven* v. *Snow*, 14 Pick. 28, are stated to have been made by the direction of an attorney, and the Court recognized his authority to determine, which should be first made and the order of sequence; and held, that notice of them to him was notice to his clients. Speaking of the

attorney the Court say, "he directed the order of attachment, and he could have no reason to doubt, that the plaintiff's attachment had been made as directed." The case of *Gordon* v. *Coolidge*, 1 Sum. 537, presents another instance of attachments made by order of plaintiffs' attorneys without any special authority, and the exercise of that power appears to have come to the knowledge of the Court without its being questioned. The St. of 1821, c. 105, and of 1829, c. 445, for the regulation of fees, recognize the authority of the plaintiff's attorney to make a written order to the officer to attach property or to arrest the body. And this Court decided, in the case of *Betts* v. *Norris*, 15 Maine R. 468, that these statutes relieved the officer from the obligation to make any thing more than a nominal attachment without a written order. The right of an attorney to order an attachment without any special authority from his client, may then be regarded as arising out of his authority to make use of any process and of any proceeding upon it, which the law affords for the collection of debts; as recognized in the practice of the law by the judicial courts; and as sanctioned in this State by the enactments of the legislature. If the authority to order an attachment be established, it will be found to include the authority to modify, restrict, and revoke it. For he cannot properly and safely exercise the authority without such a discretion. He must, in using this, as well as other remedies, be governed by the circumstances in which he is placed, and judge to what extent, as well as when it ought to be used for the benefit of his client. Can it be contended that the attorney has authority to order an attachment and no authority the next moment to restrict, or to recall it? Or does the fact that the order has been executed, deprive him of such power over it? If the property in the goods had thereby been changed, it would be so; but it only creates a lien on them, which is only inchoate and connected with the remedy and not with the cause of action. It would be most mischievous in practice to regard it as irrevocable, for the attorney might order a shop of goods in the possession of the debtor to be attached, the order might

be obeyed, and before the goods were removed the debtor might fully satisfy the attorney, that the goods were not liable to attachment for his debts, and if the attorney could not revoke the order and withdraw the officer, his client might be subjected to heavy losses in disposing of them, and to damages for breaking up the business. Such cases and others of like character would not be of unfrequent occurrence.

It has been decided, that an attorney has authority to receive payment and to discharge the debt. *Fowler* v. *Shearer*, 7 Mass. R. 23 ; *Jackson* v. *Bartlett*, 8 Johns. 367. And if he should state to the officer, who had made an attachment, that he had received payment of the debt, or that the plaintiff had settled the suit, and that he might return the goods to the debtor, if the officer should obey and the statement should prove to be incorrect, the officer must be accountable for the whole property, unless the right to control the attachment be admitted. And under such a practice denying the attorney's authority to discharge the attachment, the officer must detain the property until an order could be obtained from the plaintiff, however distant, subjecting himself or the plaintiff to damages for a detention of the property after the debt had been paid.

The attorney may discharge an attachment by filing a new count, apparently not for the same cause of action. *Fairfield* v. *Baldwin*, 12 Pick. 388. And by entering a discontinuance or nonsuit. *Gaillard* v. *Smart*, 6 Cow. 385. And it is not perceived what security it can afford the client, or what principle of law it can preserve, to deny the power to do that directly, which it is admitted may be done indirectly. In the last case, it is said, " his general power does not extend to a retraxit, or release, because they relate to the cause of action itself ; not merely to the remedy, which he is retained to conduct." And here is disclosed the true principle relative to the extent and limitation of the power of an attorney. He may elect and control the remedy, and all the arrangements arising out of and connected with it, but cannot release or discharge the cause of action without receiving payment, or do any thing

which will have that effect. The attorney may in these matters conduct so indiscreetly, negligently, or ignorantly, or may so abuse his trust, as to be answerable to his client in damages. But such conduct should not prejudice the officer, who is entitled to regard him as the legal adviser of the client in all the various contingencies which may arise in the prosecution and use of the processes adopted to secure and collect the debt, or enforce the claim; and as clothed with full powers for these purposes. The extent of an agency is properly determined, when the intentions of the principal and agent are ascertained. What are the intentions of the client and attorney, when the one entrusts to the other a demand to be collected, or a claim to be enforced? If the client were asked, if he intended, that his attorney should release or discharge the cause of action without payment or satisfaction, the answer would be, that he did not. Again, if asked if he intended that his attorney should select, control, and manage the processes and remedies to be resorted to for the purpose of collecting or enforcing his claims, the answer would be, that he did — that he did not know the law, and could not judge of these matters, and that he expected that his attorney was informed and could properly decide upon them. The responses of the attorney to these questions would be similar to those of his employer. And it is believed that the decided cases lead to this conclusion. *Beecher's* case, 8 Co. 58, decides, that the plaintiff's attorney cannot enter a retraxit, " because it shall be a perpetual bar, and in a manner a release." In *Lamb* v. *Williams*, 1 Salk. 89, and 6 Mod. 82, as reported in Salkeld, "it was held, that the attorney has authority, by his being constituted attorney, to remit damages; and that a remittitur need not be by the plaintiff *in propria personæ*, as a retraxit must." Kent C. J. in *Kellogg* v. *Gilbert*, 10 Johns. 221, speaks of this case, and says, "it did not appear, that the act was without or against the consent of the client. It was the opposite party, that made the objection on a writ of error." But the decision was, if the report be correct, that the attorney had the authority by being constituted attorney. The action was trespass against several,

and the report, in the Modern Reports states, that the jury found several damages. The case appears to have been an action against several for a joint trespass, and the finding of the several damages to have been erroneous. *Hill* v. *Goodchild*, 5 Burr. 2791. The plaintiff's attorney, instead of entering a *nolle prosequi* as to all but one measure of damages, as he might have done, 1 Saund. 207, a, note (2), released those assessed against, all but one. He did not release, therefore, any damages to which his client was legally entitled. And the case only shows such a control of the remedy as would secure all his client's legal rights. The case of the *Earl of Yarmouth* v. *Russell*, 2 Ld. Raym. 1142, affords an instance of a like proceeding by an attorney, where several damages were assessed in an action of assumpsit. It has been decided, that the attorney may refer the suit. *Buckland* v. *Conway*, 16 Mass. R. 396 ; *Holker* v. *Parker*, 7 Cranch, 436. And that, when it was referred to an arbitrator, the attorneys were guilty of negligence in omitting to attend before him. *Swannel* v. *Ellis*, 1 Bing. 347.

The principle involved in the decision of the case of *Reece* v. *Righy*, 4 B. & A. 202, would require the most vigilant attention to all the circumstances connected with the remedy. It was there held, that an attorney was guilty of negligence by suffering the cause to be called on for trial without having previously ascertained, that all the plaintiff's witnesses were present. It was decided, in the case of the *Union Bank of Georgetown* v. *Geary*, 5 Pet. 99, to be within the scope of an attorney's authority conducting the suit, to agree to postpone execution on a judgment against the indorser, and to issue it immediately against the maker. It has been stated in the cases of *Tipping* v. *Johnson*, 2 B. & P. 357, and of *Jackson* v. *Bartlett*, 8 Johns. 367, that the authority of an attorney determines with the judgment." And in 1 Rol. Abr. 291 ; *Morton's* case, 2 Show. 139, and 2 Inst. 378, have been relied on as authority for this assertion. In *Russell* v. *Palmer*, 2 Wilson, 325, it was however decided, that an attorney was guilty of negligence in omitting to charge in execution, within

two terms of the judgment, a debtor, who was in prison. In *Burr* v. *Atwood*, 1 Salk. 89, it was decided, that the attorney in the original suit might sue out a *scire facias* against bail. And in *Dearborn* v. *Dearborn*, 15 Mass. R. 316, that he was guilty of negligence in omitting to do it. In the case of *Cheever* v. *Mirrick*, 2 N. H. R. 376, that he might consent, that an alias execution should issue for the benefit of an officer, who had given security for the debt. In *Doty* v. *Turner*, 8 Johns. 21, the Court recognise the authority of the attorney, when he delivered an execution to an officer, to instruct him, "that he need not remove the property to be levied on out of the possession of Pierce [the debtor] nor need he take a receipt for it."

And a somewhat similar exercise of authority over the execution was admitted in *Kellogg* v. *Griffin*, 17 Johns. 274. In *Brackett* v. *Norton*, 4 Conn. R. 517, it was decided, that the attorney may give directions concerning the levy of the execution. And in that case it is said, "when a note is sent for collection from a creditor in one State to an attorney in another, by the reception to collect, the latter assumes the duty of performing the measures requisite for the purpose with integrity, diligence and skill." In the case of *Lynch* v. *The Commonwealth*, 16 S. & R. 368, it is said, "the attorney is in some degree the agent as well as the lawyer of the plaintiff; when execution has issued, he often gives time to the defendant, and directs the sheriff to postpone a sale advertised, and so far as I know, this has always been taken as a justification to the sheriff for not selling. Such discretionary powers are necessesary for the plaintiff's interest; without the exercise of them many times and under many circumstances property sufficient to pay the debt would not sell for enough to pay the costs." "If a plaintiff wishes his attorney to have less power, than is usually exercised, it would seem more consonant to right to give him in writing a special and limited authority, than to bring the law of another country and say in opposition to constant and general understanding that the power of his attorney is to be judged of by that law." "In the present case, if the attorney had told the

sheriff to abstain from selling he would have obeyed, must have obeyed." The case of *Gorham* v. *Gale*, 7 Cow. 739, decides that it is within the authority vested in the attorney to direct the sheriff as to the time and manner of enforcing the execution. And after judgment it has been decided to be the duty of an attorney in the suit to bring a writ of error to reverse it, if it be erroneous. *Grosvenor* v. *Danforth*, 17 Mass. R. 74. And that he has authority to make the demand on an administrator required by statute, before another suit is commenced on his administration bond. *Heard* v. *Lodge*, 20 Pick. 53. And that he may, while the suit is pending, bind his clients to waive a notice required by statute. *Alton* v. *Gilmanton*, 2 N. H. R. 520. And that it was his duty, even contrary to the express instructions of his client, to consent to open a default, when according to the settled rules of practice the Court would do it. 1 Wend. 108.

In *Jackson* v. *Bartlett*, 8 Johns. 361, it was denied, that the plaintiff's attorney had authority to discharge the defendant from an arrest on the execution, before the money was paid. The ground of the decision was, that it discharged the debt, which he could not do without satisfaction. To the same effect is the case of *Kellogg* v. *Gilbert*, 10 Johns. 220, where however it is said, that "in the progress and until the consummation of the judgment the attorney has, no doubt, and ought to have, a large and liberal discretion." In the case of *Iveson* v. *Conington*, 1 B. & C. 160, the attorneys of the parties agreed, that the record in the suit should be withdrawn, that the defendant should take back the horse named in the suit and pay an agreed sum to the plaintiff who should pay costs to the defendant; and the Court said, that the plaintiff was not bound by that agreement. It will be perceived, that the attorney not only undertook to discharge the plaintiff's claim by a compromise, but to make him part with his property in the horse. In *Beardsley* v. *Root*, 11 Johns. 465, it was decided, that the attorney of the plaintiff had no authority to purchase for his client property sold on the execution. And in *Lewis* v. *Gamage*, 1 Pick. 346, that he could not discharge

a debtor upon receiving a sum less than the amount due. And in *Millanden* v. *McMicken*, 19 Martin, 35, that he could not release the debt, though he might 'grant a stay of execution. And in *Waldon* v. *Grant*, 20 Martin, 565, that he could not alienate a judgment obtained by his client. In the case of the *York Bank* v. *Appleton*, 17 Maine R. 55, it was decided, that an attorney could not release an indorser upon the note in suit. And in the case of *Springer* v. *Whipple*, 17 Maine R. 351, that he could not release one interested in the event of the suit to enable him to testify. To the same effect is *Murray* v. *House*, 11 Johns. 464, and *Marshall* v. *Nagel*, 1 Bailey, 206. In these cases there was an attempt to release collateral interests, or a part of the claim in suit. The case of *Fling* v. *Trafton*, 13 Maine R.. 295, admits an attorney to have power to receive satisfaction of an award, discharge the rule of reference, strike out the name of one defendant, and prosecute the suit to judgment against another defendant.

There has been no decided case claiming perhaps a more extensive authority and a larger discretion for attorneys in matters relating to the remedy, than the case of *Gordon* v. *Coolidge*, 1 Sum. 537. And while it may justly claim more deference from the consideration, that Mr. Justice Story, who in his treatise on Agency has so thoroughly examined the principles and decided cases, delivered the opinion; it may be doubted whether in some respects it does not, if it be correctly understood, give a more enlarged authority to the attorney, than will be found authorized by any decided case. The facts bearing on this point, as there stated, are in substance; that Messrs McGaw & Hatch, attorneys at law in Bangor, previous to the month of October, 1831, received from Loring and Kupfer, and from Bradley and Sigourney, all of Boston, demands against the defendant for collection. On the fourth day of that month writs were made upon these two demands and delivered to an officer to be. served when necessary. On the following day these attorneys were requested to obtain security for a demand of Gilman, Pritchard & Co., against the defendant. To accomplish this, an assignment of his stock of goods was made

by the defendant on the same day to these attorneys to be sold by them and the proceeds applied to pay, 1st, Grant & Stone; 2d, Loring & Kupfer; 3d, Bradley & Sigourney; 4th, Gilman, Pritchard & Co., and then others. This assignment having been made without the knowledge or consent of Mr. McGaw, on the following day he required attachments of the goods to be made on the writs in favor of Loring & Kupfer, and Bradley & Sigourney, these suits were prosecuted to judgment and a part of the goods assigned were sold on the executions obtained on them, and the remainder were sold under the assignment. Hatch signed the assignment "McGaw & Hatch, for the creditors herein named." Gilman, Pritchard, & Co. affirmed these acts. The plaintiff summoned McGaw & Hatch as trustees of Coolidge in a suit in their favor against him. In the opinion delivered it is said, "McGaw & Hatch insist, that they had full authority to bind all their clients by the assignment, if in their discretion, they chose to exercise it. Nor do I perceive how upon the facts this power can well be denied them. The debts were confided to them for collection according to their discretion. And if they chose to take security instead of enforcing an immediate collection by suits, it seems to me clear, that they were at liberty so to do. And they might elect the security of a general assignment, if in the exercise of a sound discretion, that appeared to them to be the best for their clients. There is no pretence to say, that any limitation was intended by the creditors upon their discretion. They were left with an implied general liberty to act in the premises, as they might deem best for the interests of their clients." When speaking of the signature of Hatch in the name of McGaw & Hatch, as attorneys of the creditors, the Judge says, "It was an act binding on the creditors who were their clients. It has never been repudiated by them. And I exceedingly doubt, if in point of law, it was capable of being repudiated. If then the creditors were bound by it, the subsequent acts of McGaw & Hatch in proceeding on the attachments were unjustifiable and irregular." This case is understood as directly or by implication admitting, that the attorneys without any

special authority therefor might direct attachments to be made; that on obtaining, what in their own judgment was more satisfactory security, they might forbear to proceed on them; that they might delay an immediate collection by suits, and take security; and that they might elect as such security a general assignment and one giving a preference over their clients to one whom they did not represent before the taking of the assignment. As the greater includes the less, if an attorney may forbear to prosecute, or withdraw, or relinquish an attachment absolutely, he may do so conditionally upon security given to the officer or to himself for the goods attached. Or according to the last case he may take other collateral security not subject to the dangers and difficulties of an attachment. And it may often happen, that the interest of his client would be greatly promoted by his relinquishing an attachment of property occasioning a heavy expense to preserve it, or to which the debtor's title was doubtful, and taking other security in the place of it. In this way the debt might be eventually collected, when without the exercise of such authority it would be lost. The usual course of permitting goods attached to remain in the possession of the debtor, or of his friends upon his giving security to the officer to produce them or their value, is but a mode of releasing the attachment upon new security taken. And it would often happen without resorting to such a course, that an attachment would not only be useless but expensive to the plaintiff by subjecting him to heavy expenses. The attachment of live animals requiring to be kept, of vessels, and of logs floating upon the water, may be named as examples. If, as has been suggested, the only property of much value, which the defendant in this case had, consisted of logs floating on the waters of the St. Croix river, well might the plaintiffs' attorneys not only have been justified, but deserving of commendation instead of censure for making the arrangement stated in the case. For it may readily be perceived, that such logs could be floated into the Province of New Brunswick as easily as to the place of manufacture in Maine. And that any attempt by the officer or his agents to seize, secure and preserve

them would be unsuccessful, as it would have been expensive. And if they might take a general assignment as security, they might through the instrumentality of the sheriff, well prefer taking what were then considered two good names as security, in preference to attempting to make such an attachment. The instructions on this point are considered as authorized by our practice and by the law, as exhibited in the decided cases. Courts do not grant new trials to enable parties to recover nominal damages only. *Harris* v. *Jones,* 1 M. & Rob. 173. As none of the objections can prevail, there must be judgment on the verdict.