## WILLIAM WILLARD *v.* HARRY GOODRICH.

### *Officer. Attorney.*

The plaintiff had recovered judgment against a sheriff for neglecting to collect an execution, and at the same term the sheriff obtained a judgment against a receiptor of the property attached in the original suit in which the execution issued which he had neglected to collect. The plaintiff's attorney in the suit against the sheriff was also the attorney of the sheriff in his suit against the receiptor, and delivered both executions at the same time to the defendant, a constable, and told him that he might go to the sheriff for instructions in regard to collecting the execution against him, which the defendant did, and the sheriff directed him not to return the execution, and he suffered it to expire in his hands; *Held*, in an action against the defendant for his neglect to return the execution against the sheriff, that the instructions of the plaintiff's attorney to the constable were within his authority as attorney to give, and were sufficient to exonerate the defendant from liability for not returning the execution.

The attorney of an execution creditor has full authority to direct an officer as to the time and manner of enforcing the execution.

CASE against the defendant, as constable of the town of Middlebury, for neglect in not returning an execution in favor of the plaintiff against one Church. Plea, the general issue, and trial by jury, at the December Term, 1858,—BENNETT, J., presiding.

On trial the defendant admitted the recovery of a judgment by the plaintiff against Church; the issue of an execution thereon, and its receipt and non-return by the defendant as constable, as set forth in the declaration.

It also appeared that the plaintiff had previously obtained a judgment against one Trowbridge, and that upon the original writ in that case Church had, as sheriff of Addison County, attached property, and had taken a receipt therefor of one Harris, and had afterwards received the execution therein against Trowbridge, and had returned it unsatisfied. From this default of his arose the suit upon which the execution against Church was issued, for the defendant's neglect to return which the present suit was brought.

It further appeared that a suit was instituted in favor of Church against Harris, on his failure to deliver up the property receipted by him, in which judgment was recovered and execution issued at the same term as the execution against Church, above mentioned.

The defendant testified that he received both the execution against Church and that against Harris, of Mr. Beckwith, the attorney of the judgment creditor in each of those cases, at the same time, and that at the time he received them he asked Beckwith if he had any directions to give about them, to which Beckwith replied, " no, you may go to Mr. Church for directions;" that just before the execution against Church was about to expire, he called on him and notified him of that fact, and asked him what he should do with that execution, and the one against Harris, then also nearly expired; that thereupon Church directed him not to return the execution against himself, and said that they would go to Beckwith and get his consent to a renewal of it; that they accordingly did apply to Beckwith for that purpose, and he assented, and that they accordingly procured the clerk of the court to alter the date of the execution from the 21st of December, 1855, to the 18th of February, 1856, and to make the corresponding docket entry; that just prior to the expiration of the sixty

days, dating from the date last named, he again applied to Church for directions in regard to the execution, and that Church then told him that he need not return it, and that consequently in reliance upon such instructions he did not return it, but suffered it to expire in his hands.

The court, inasmuch as there was no evidence in the case tending to show that Beckwith had any authority to control the execution against Church, but that of an ordinary attorney, held that his authority was of a limited character, and that he could not delegate to Church, the judgment debtor, to control the execution in such a way as to bind the judgment creditor, even if the jury should find that he had attempted to do so in this case; and that the defendant was bound to understand that he had no such authority, and therefore the court directed a verdict for the plaintiff, for the amount due on the execution, including interest.   To which the defendant excepted.

*J. W. Stewart* and *E. J. Phelps*, for the defendant, cited *Strong* v. *Bradley*, 13 Vt. 9 ; *id.* 14 Vt. 55 ; *Kimball* v. *Perry*, 15 Vt. 414; *Bull* v. *Badger*, 6 N. H. 405 ; *Jenny* v. *Desdernier*, 2 Appleton (Me.) 183 ; *Goddard* v. *Austin*, 13 Mass. 133.

*Roberts & Chittenden* and *F. E. Woodbridge*, for the plaintiff, cited Story on Agency sec. 14; Paley on Agency 49–175; 1 Parsons on Contracts 71.

ALDIS, J.   When a party or his attorney assumes to give special instructions to an officer, in regard to the execution of process in his hands, differing from his legal duty, it is held that the officer is exonerated from his legal liability.   The reason of this is, that he is influenced by such instructions to omit the performance of his plain official duty.   He ceases to be a public officer, as to the business so entrusted to him, and becomes a private agent.   In *Strong* v. *Bradley*, 14 Vt. 55, a leading case on this subject, and in which the law was carefully expressed, it is said, "if the officer was in any degree influenced by these special instructions, he is exonerated from all liability on account of his conduct."   "The burden rests on the plaintiff to show that the officer was not influenced by such special instructions."

There can be no doubt that the attorney has full power to direct the sheriff as to the time and manner of enforcing an execution; *Gorham* v. *Gale*, 7 Cow. 739.

He may direct him to proceed or to suspend proceeding. He is vested with a large and liberal discretion in everything pertaining to the collection of the debt. He may not discharge it without satisfaction, but short of that in everything that pertains to the selection of remedies and control of process, he has, as attorney, the most ample authority. This is required by the necessary confidence reposed in him by his client, by the client's ignorance in regard to legal rights and remedies, and by his pecuniary interests. The case of *Jenny* v. *Desdernier*, 20 Maine 183, collects a very large number of decided cases, and fully sustains these views.

The attorney in this case had an execution against Church, the sheriff, upon a judgment recovered for official neglect. He had another execution in favor of Church, issued on a judgment rendered against the receiptor for his refusal to deliver up property attached on the debt upon which Church had been sued for neglect. Thus Church stood substantially in the position of a surety for the debt.

The attorney, on delivering the executions to the defendant, who was a constable, in reply to an inquiry on the subject, said to him, " I have no directions to give about the executions; you may go to Mr. Church for directions."

What is the reasonable construction to be put on these words? What must the constable have fairly understood them to mean?

Clearly, that he was not to proceed in the straightforward line of his official duty in collecting the execution, unless the debtor directed him to do so; that he was to give time if the debtor wished; to omit to make a return if he requested; to proceed or to suspend proceedings as the debtor might desire.

It was not fairly to be construed as an authority for him to discharge the execution without satisfaction; he would not understand it to mean that; but it was to follow the debtor's directions in regard to collecting or omitting to collect it according to law.

The collection of the debt being ultimately safe, and Church but a surety, such directions would not be deemed unusual or

extraordinary. It is not very uncommon for the surety to sue in the name of his creditor, and to control the suit and execution, for the purpose of collecting the debt of his principal. Goodrich could not tell what understanding existed between Willard and Church, or Beckwith and Church. He might well suppose the attorney understood his business and the scope of his authority, and the true interests of his client.

Practically it seems to us that it would have been a most extraordinary thing for Goodrich to say to the attorney "I can not follow these directions, for you are delegating to the judgment debtor the authority specially reposed in you." To require Goodrich to take such a view of the attorney's directions seems to us unreasonable. On the contrary, we should expect him to do as the attorney directed. He could not prevent such instructions being followed by another officer, if not by him. He must have known that the only effect of his refusal would be, either that another officer would be entrusted with the execution, or that Beckwith would himself consult Church and give directions personally.

The rule that an attorney must in all cases ascertain and give directions personally, instead of referring the officer to third persons for instructions, if established, would be highly inconvenient, if not impracticable. He is frequently obliged to rely on others, and in his discretion may refer an officer to others; to the judgment debtor as well as others, when in his judgment he thinks or knows his client's interests or wishes will be promoted. And it would be productive of great mischief if the officer were to assume to go behind the attorney, and to step in between the attorney and the client and attempt in his own discretion to judge of and protect the client's interests in the collection of debts.

We think this case can not be regarded as falling within the maxim, " *delegatus not potest delegare*," but *simply* as one where an attorney gave directions, which, fairly understood, must have influenced the officer to omit the performance of his strict official duties, and so would exonerate him.

Another point has been made, that when the date of the execution was altered, the execution became a new one, *an alias,*

and the directions first given by Beckwith ceased to apply to the new execution.

This point was not raised in the court below. The ruling of the court that the instructions upon which Goodrich relied for a defence would not exonerate him, put an end to the case and made it needless for counsel to raise or the court to decide the question here presented. As the court did not pass upon it, we can not suppose that the testimony applicable to it is fully presented in the exceptions. Even as it is, we think it might have been presented to the jury to decide whether the instructions were not understood by both parties to apply to the altered as well as to the original execution. But as this point could not have been raised below, and is not noted in the exceptions, and as the evidence connected with it can not be presumed to be fully stated, we think it would be improper for us to pass upon it here.

The judgment of the county court is reversed.