CHAUNCY L. HILL *v.* CHANDLER PRATT.

*Duty and liability of an officer in reference to attaching property.*
*Evidence.*

If an officer receives for service a writ of attachment without any special instructions accompanying it, it is his duty to serve it, according to its precept, by attaching property of the debtor if any can be found by the exercise of reasonable diligence, respecting the ownership of which there is no reasonable doubt.

An agreement by the officer to serve a writ for less than the legal fees will not vary his duty in this respect: and in an action against him for neglecting to attach property, testimony showing such an agreement is inadmissible.

To sustain such an action it is not necessary that the creditor should take out an execution and place it in an officer's hands within thirty days from the rendition of the judgment, but reasonable diligence should be used to collect the execution of the debtor.

Neglect to answer a letter is, in ordinary cases, no evidence of an assent to the statements contained in it, particularly when the statements refer to past transactions upon which no future action is contemplated.

ACTION ON THE CASE against the defendant, as sheriff, for the default of his deputy in not attaching property. Plea, the general issue; trial by jury, November Term, 1856,—PECK, J., presiding.

The plaintiff in November, 1851, prayed out a writ of attachment in his favor against the Rutland & Burlington Railroad Company, demanding in damages the sum of one hundred dollars, and commanding the officer to attach property to that amount, which writ was made returnable before a justice of the peace at Burlington in the county of Chittenden, on the last Tuesday of December, 1851.

The defendant was then sheriff of the county of Windham, and George Slate of Rockingham was his legal deputy, and the plaintiff's writ was placed in Slate's hands as such deputy, for service. The Rutland & Burlington Railroad Company then had visible, attachable, personal property, used in running on their railroad from Burlington to Rockingham, which said Slate might have attached upon said writ; but he made service of it on the 27th of said November, by attaching one chip only which was of no value. Such proceedings were had that a judgment was rendered by the justice in favor of the defendants from which the plaintiff appealed to the county court, where such proceedings were had that at its February adjourned Term, 1854, that the plaintiff recovered a judgment for ninety-one dollars and sixty-six cents damages, and twenty-seven dollars and forty-nine cents costs.

In November, 1853, the Rutland & Burlington Railroad Company failed, and after that time had no visible property upon which said judgment could be satisfied.

The plaintiff gave in evidence an execution issued upon said judgment on the 23d day of May, 1854, accompanied with proof that it was at that time placed in said Slate's hands, who was still deputy sheriff, and that he, on the 15th of July, 1854, returned it unsatisfied, together with proof that said judgment and execution were still unpaid.

The defendant offered in evidence two letters, one dated September 6th and the other November 26th, 1851, in which last letter, it was conceded, the writ in favor of the plaintiff against the railroad company was enclosed; and the defendant also offered to show that when he returned said writ to the attorneys of the

plaintiff, he worte them a letter *saying that he had served said writ according to their instructions, to which neither the plaintiff or his attorneys made any reply.*

The defendant also offered in evidence a bill of fees in favor of Slate against Wires & Peck, the attorneys of the plaintiff in said suit against the railroad company, showing the fees for the service of said writ to have been settled on the 21st of January, 1855, upon the terms suggested in the letter dated September 6th, 1851.

It was conceded by the defendant's counsel that no instructions were given in relation to the service of the writ in question or any other writ except those contained in said letters.

The court excluded the letter of the 6th of September upon the ground that it had no tendency to show that there was an understanding between the plaintiff's attorneys and said Slate that said writ was not to be served by an attachment of property, and they also excluded the bill of fees upon the same ground; and they decided that the evidence, offered to snow that Slate wrote to the plaintiff's attorneys that he had served the writ according to their request, was inadmissible, inasmuch as there was no request to serve it in the manner it was served; it being conceded that the officer had no instructions except what were contained in said two letters.

The court charged the jury that, placing said writ in the officer's hands in the manner the evidence showed it was done rendered it incumbent upon him to secure the debt by attachment of property if the said railroad company had attachable personal property in their possession at the time of service which might, with reasonable diligence on the part of Slate, have been attached; and that if, at the time of the rendition of the judgment, said railroad company had failed so that no property could be found to satisfy it, it was not necessary in order to lay the foundation for this action that an execution should have been issued and placed in the hands of said Slate, or any other officer, within thirty days from the rendition of the judgment, but that the plaintiff was bound to use reasonable diligence in collecting the judgment of the railroad company so as to prevent the damage or loss, arising from the neglect of the officer in serving the writ, from being any greater than necessary.

Under these instructions the jury returned a verdict for the plaintiff. Exceptions by the defendant.

The letters offered in evidence by the defendant read as follows :

"Burlington, Vt., 6th Sept., 1851.

"George Slate, Esq're, Bellows Falls, Vt.— Dear Sir:

"When we sent the writ of Dufresne vs. the R. & B. R. Co. to you for service a few days since, we did not say anything about your serving writs for us for less than legal fees; and do not understand the request that you made upon Mr. Baxter to inform us that your 'practice is to charge full fees and make deductions in case of misfortune.' We have for the last two years had a large number of writs to be served on that company, most of which are trustee writs, and a great portion of them for small amounts due from their workmen in various capacities, and presume we shall continue to have more or less business of that character for the ensuing year. The regular travelling fee for service we see is seven dollars and eight cents, which in most of our cases would deter us from commencing suits to collect small amounts, and we therefore take the liberty to propose to send you all our business against the railroad company or other corporations or persons in your town, and will in all cases allow you on writs or processes returnable to the county court or court of chancery, for travelling fee, four dollars, and on justice writs, three dollars beside the other fees for copies, &c., &c. You may charge full fees and we will charge you back the excess. This fixes a *rule* for *our* business by which we will be governed if agreeable to you.

"Please answer and say if acceptable to you.

"Yours, &c.,                    WIRES & PECK."

"Burlington, 26th Nov., '51.

"George Slate, Esq're — Deputy Sheriff — Dear Sir:

"Please to serve and return the inclosed writ, and oblige

"Yours,                    WIRES & PECK."

*H. E. Stoughton* and *L. A. Grant*, for the defendant.

Under our attachment law, the mere delivery of a writ of

attachment to an officer, with a request to serve and return, would not, in law, make it incumbent on the officer to look up property and *secure* the debt by attachment thereof.

This doctrine seems to be fully recognized in Massachusetts. See *Goodnow* v *Willard*, 5 Met. 517, and the point is directly decided in *Betts* v. *Norris*, 3 Shep. 463. (See Sup. to U. S. Digest vol. 2 page 771, secs. 112 and 113.) See *Palmer* v. *Gallup*, 12 Conn. 555, (2 Sup. U. S. Digest, sec. 129.)

If, when Slate returned the writ to the plaintiff's attorneys, he informed them that he had served it as they desired, they knowing that he was acting under the belief that the service was satisfactory to them, and in accordance with their directions, and they did not undeceive him, the plaintiff would be estopped from maintaining this action; 1 Greenleaf's Ev., secs. 27, 195–6–7 and 207. *Hicks & Co.* v. *Cram et al.*, 17 Vt. 449; *Davis & Aubin* v. *Bradley & Co.*, 24 Vt. 55; *Commonwealth* v. *Call*, 21 Pick. 515; and the letter and bill, together with the proof offered to show what transpired when the writ was returned, were admissable as tending to show these facts, and ought not to have been excluded. See also *Gale* v. *Spooner*, 11 Vt. 155.

It was necessary in order to lay the foundation of this action, to show that an execution issued upon said judgment within thirty days from the rendition thereof; Comp. Stat. 253, sec. 83; *Jameson* v. *Mason et al.*, 12 Vt. 599; *Day* v. *Sweetzer*, 2 Tylor 283; *Weeks* v. *Martin*, 16 Vt. 237; *Crooker* v. *Hutchinson et al.*, 1 Vt. 78.

If there was a contract or privity existing between the defendant's deputy and the plaintiff's attorneys, the defendant cannot be held liable. The letter and account and other testimony offered by the defendant, tended to show that fact, and should have been admitted upon that ground, if upon no other; *Wetherby* v. *Foster*, 5 Vt. 136; *Marshall* v. *Hosmer*, 4 Mass. 63; *King* v. *Sheriff of London*, 18 Com. L. R. 334; *Porter* v. *Viner*, 1 Chit. R. 613; (18 C. L. R. 334.)

*W. W. Peck* and *E. Harney*, for the plaintiff.

The opinion of the court was delivered by

ISHAM, J. The question as to the liability of the sheriff for the neglect of his deputy in not attaching property as directed in the writ, when no special instructions as to the manner of service were given, is to be determined by a construction of our statute, for no such proceeding is known at common law. The Comp. Stat. 97, secs. 4, 20, provides that the sheriff shall have power, and that it shall be his duty to serve and execute all lawful writs to him directed, *according to the precept thereof, and agreeably to their direction.* It is also provided, 311, sec. 11, that "If in any case, there is reasonable doubt as to the ownership of the property, or its liability to be taken, the officer may require security to indemnify him for taking the same, and if the security is not provided, and no other property can be found, he may make his return of *non est inventus."* It is not pretended in this case that any reasonable doubt existed as to the ownership of the property which the officer neglected to attach, nor is it pretended that the officer requested security to be given as an indemnity for making the attachment. The question is therefore unimbarrassed by the provision in that section of the act. The intention of the legislature is expressed in clear and explicit language. The officer is required to serve the writ according *to its precept* and *agreeably to its direction.* When no special instructions are given, and property belonging to the debtor can be found in the exercise of reasonable diligence, it is the duty of the officer to attach the same to the amount and value specified in the writ, and to keep the same *in custodia legis* for the security and payment of the judgment which the plaintiff may recover. He is to look to and be governed by the directions in the writ, in which those specific instructions are given which points out his duty as it is required by the act. From the performance of that duty the officer is not relieved by any provisions of the statute, nor by any which have been passed *in pari materia,* except in cases of a doubtful ownership of the property, and where a bond of indemnity has been requested. This construction is in accordance with the letter of the act and is, we think, within its spirit. It fully protects the interests of the creditor, and at the same time it imposes no unreasonable risk upon the officer. It is possible that in practice a different construction may to some extent have prevailed, but the statute is too

specific and plain in its provisions to be evaded or disregarded. In the case of *Butts* v. *Norris*, 15 Maine 468, it was held that " an officer is not bound to make a special service of a writ by attaching property *without written directions* to that effect." The statute in that state gives an additional compensation to the officer when service is made by the attachment of property. When no written instructions to attach property are given, the officer is not required to make service in that way; a general or nominal service, such as will enable the party to proceed with his suit to judgment, is all that is required. Under this statute, written directions to attach property must accompany the writ to impose upon the officer the duty which in this state is imposed by the delivery of the precept alone; *Bradford* v. *McLillan*, 23 Maine 302; 6 Shepley 79; 1 Mason 96; *Bond* v. *Wood*, 7 Mass. 133; Story on Bail 390; Drake on Attach., secs. 181–2.

The writ in this case was issued in behalf of the plaintiff against the Rutland and Burlington Railroad Company, and delivered to the defendant's deputy with written directions *to serve and return*. The attachment was merely nominal, though ample security on personal property, then in the visible use and possession of the company, might have been obtained for the payment of the debt. Before final judgment was obtained, the company became insolvent, and the debt valueless. Under those circumstances we think the ruling of the court below was correct, that the delivery of the writ to the officer *to serve and return* rendered it incumbent upon him to secure the debt by attachment of property, if the railroad company had attachable property in their possession, which might with reasonable diligence have been attached; and that for any neglect in that matter, the defendant is liable for damages sustained.

The duty of the officer in the service of writs is for the benefit of the creditor. It is due to him only, and the precept is so far under his direction and control that he is at liberty to waive it. If directions are given for the service of the writ in any other manner, or if any arrangement between the officer and creditor exists to that effect, the sheriff is relieved from any liability. Whether such an understanding exists or not is a question of fact to be determined on competent proof. We perceive no objections

to the ruling of the court in rejecting the letter of September 6th, 1851, and the account as stated and settled under date of January 21, 1853. If the testimony had a tendency to show the fact for which it was offered, that a nominal attachment was made under an arrangement to that effect with the plaintiff's attorneys, we have no doubt of its admissibility. The testimony was rejected as having no such tendency, and we think properly so. The letter simply contains proposals under which, if accepted, the deputy sheriff could do the business of the office. The account rendered and settled shows that the terms of that letter were accepted and acted upon by the parties. No allusion whatever is made to the manner in which writs were to be served or the duties of his office discharged. It will hardly be contended that a simple agreement by the officer to take less than legal fees for the service of writs, will relieve him from the performance of such duties as are imposed upon him by statute.

The same observation may be made in relation to the letter stated to have been written by the deputy sheriff, after the service of the writ, and inclosing the same to the plaintiff's attorneys, therein stating that the writ had been served agreeably to their directions, and to which no answer or reply was made. The only matter which it is contended gives weight to that letter as evidence in the case is a presumed assent of the plaintiff or his agents to the facts therein stated, arising from their silence or neglect to correct that statement. If a verbal statement of that fact had been made to the party or his attorneys, to which no dissent was expressed, it probably would be evidence, and for the jury to say whether their silence amounted to an acquiescence on their part to the statement that such directions had been given. But it would seem that the rule has never been extended to unanswered letters ; particularly when the fact stated has relation to past transactions, and upon which no future action of the party is contemplated. The mere fact that letters were received and remain unanswered has no tendency to show an acquiescence of the party to the facts stated in them. A party is not to be driven into a corresponcence of that character to protect himself from such consequences. In the case of *Firbee* v. *Denton*, 3 Car. & Payne 103, the plaintiff had sent a letter to the defendant

demanding a sum of money as due to him, to which no answer was returned. On the offer to prove its contents for the same purpose for which the offer was made in this case, Lord Tenterdon, C. J., observed: "I am slow to admit that. What is said to a man before his face, he is in some degree called on to contradict, if he does not acquiesce in it; but the not answering the letter is quite different; and it is too much to say, that a man by omitting to answer a letter at all events admits the truth of the statements that letter contains. I am of opinion," he observed, " that this letter cannot be read." It was evidence to show a demand of a specified sum, but not evidence of an indebtedness in that sum, or in any other amount.

We think the court were correct, also, in holding that it was not necessary to issue an execution on the judgment and deliver it to the officer within thirty days after its rendition. This is not a case in which the officer is charged with a neglect of duty in not keeping property attached to be applied on an execution, but the ground of complaint is the neglect of the officer in not making any attachment of property whatever.

The judgment of the county court is affirmed.