## ST. JOHNSBURY & LAKE CHAMPLAIN RAILROAD COMPANY v. B. A. HUNT.

*Railroad. Sheriff. Power to Arrest Engineer on Train.*

An officer having a writ by which he is commanded to arrest the body of the defendant, a railroad engineer, may lawfully stop a train of cars run by such engineer, for the purpose of making the arrest.

Action on the case for stopping the plaintiff's cars. Heard on demurrer to the defendant's special pleas, June Term, 1887, Veazey, J., presiding.

The court considered that, although the defendant might lawfully have caused his process against Collins to be served by arresting his body, if the officer could have got at him on the train, or off the train at the station when the train stopped without interference of the officer or in his behalf, regardless of the damages to the plaintiff, yet Hunt and his officer had no right to stop the train in order to get at Collins to serve this cival process upon him. As the special pleas do not answer the averment of the declaration in this regard the demurrer is sustained and the pleas adjudged insufficient.

The case appears in the opinion of the court. See same case in 59 Vt. 294, and in 55 Vt. 570.

*P. K. Gleed*, for the defendant.

The plea discloses that Hunt had a good cause of action against Collins for a trespass committed by him while acting as agent and engineer of the plaintiff. This case in 59 Vt. 294.

The defendant obtained a subsequent judgment which Collins paid. It is admitted that Collins was on the train and controlling the engine at the time of the arrest.

The question submitted is this : Had the officer the legal right to stop the train for the purpose of arresting Collins? This case in 55 Vt. 570 ; Hill. Torts, ch. 1, s. 13.

The plaintiff, therefore, does not stand as unaffected by and innocent of the wrong for which defendant was seeking redress in stopping the train to arrest Collins. If it be unlawful to stop a train to arrest a passenger, how can such a rule apply here ? The plaintiff ought not to complain, as he has put on to his engine and kept in his employ this careless servant, Collins, who has injured the defendant. An officer may break open the dwelling-house of a third person to attach the goods or body of the defendant in the process. *Burton* v. *Wilkinson*, 18 Vt. 186 ; Smith's Lead. Cas. vol. 1, 218.

May he not as well stop a train as break in a door ? Extreme cases might be supposed by way of inconvenience for or against the right claimed. Can not an officer stop a coach full of passengers to arrest one of them? What is the difference in the two acts? Only one of *degree*. The right is precisely the same in both cases.

Again, in this State at least, this is a new attempt to limit the power of an officer in serving legal process. If the public convenience or safety requires this limitation would it not come most naturally from the legislature, like cases under sections 1457 and 1458? Is the court warranted in putting this limitation upon the power of an officer who is commanded to arrest a citizen while the officer has had no means of knowing that his right does not extend to the stopping of a train ?

*Ide & Stafford*, for the plaintiff.

It will be observed that there is no answer to the allegation that the defendant stopped the train of the plaintiff and delayed its movements for an hour in order to arrest its engineer upon a little civil cause, except his allegation that he had

a legal cause of action against the engineer. The question is therefore clearly presented whether one has a right to stop a railroad train for the purpose of arresting any person thereon to answer to a writ in a civil suit.

We are aware of no case wherein this question has been presented. The right to arrest existed at common law and still exists in this State except so far as it has been modified by statute, but the right has never been an unqualified one. On the contrary it has from time immemorial been softened and limited in cases where the full exercise of the power would work injustice or interfere with the right of household privacy, religious decorum or the demands of public policy. We suppose this case will be determined by common law principles; not necessarily by any single case which has heretofore arisen, but by the application of the good sense of the old law as applied to novel circumstances. The common law granted to a plaintiff even in a civil suit the right to arrest the body of the defendant upon mesne process, but, at the same time, announced that the sheriff could not, in executing such a writ, break open the door of a dwelling-house. The reason whereof is thus stated in Bacon's Abridgement, Tit. Sheriff (N) 3: "This privilege which the law allows to a man's habitation, arises from the great regard the law has to every man's safety and quiet, and therefore protects them from those inconveniences which must necessarily attend an unlimited power in the sheriff and his officers in this respect; and hence it is that every man's house is called his castle." In other words the common law thought it better that civil process should go, for the time being, unserved than that authority should be given to a sheriff to enter a man's house against his will and to subject the family to the annoyance of such disturbance and to the abuses likely to accompany the exercise of such power. It has long been the law in England, and it is the law in this State, that civil process cannot be served on the Sabbath. See Bacon's Abr. Sheriff (N) 4; Comyns' Dig. Execution (C) 5; Murfee on Sheriff, s. 156, 161, 268, 932.

It is quite possible that by reason of both of these limitations upon the right of arrest, offenders against civil rights have escaped their deserts, but it would scarcely be claimed that either limitation was unwisely made. The English common law has various illustrations of places (so-called " liberties ") where it is unlawful for a sheriff to exercise his functions. Such were the " Verge of the Court " and the " Tower of London." There are no corresponding " liberties " in this country. And these are but examples of the power of the courts to modify the vigor of any common law rule as the exigences of the time demand. Such a question as the present never came within the scope of the ancient law for obvious reasons. Had such a case arisen it is difficult to conceive that the reasons which dictated the ameliorations just mentioned would have allowed an arrest at such a loss to public convenience, and at such violation of the public rights as must follow the permission of the right of arrest under such circumstances as are set forth in the declaration. Railroads have come to be the great thoroughfares for travel and transportation. Upon the punctual movements of their trains great interests depend, both of property and life. This case is not to be decided upon the theory that the plaintiff's only claim to recover rests upon the fact that as an incident of the arrest he lost the service of an employee. That is not the claim we press. The question is one of public policy, In this very case a man with a trifling claim however legal, caused a deputy sheriff to go forth in the middle of the night and swing the danger signal in front of the most important train upon the plaintiff's road, and caused a delay which was actually serious and might easily have been far more so.

The opinion of the court was delivered by

POWERS, J. This case was heard upon a general demurrer to the defendant's third special plea. The declaration in substance charged that while the plaintiff was lawfully and properly operating its railroad in running a train of which Collins was

the engineer, its engine struck and injured a heifer of the defendant there by the fault of the defendant, wrongfully upon its track, and the defendant knowing he had no legal cause of action against the plaintiff, for the purpose of injuring the plaintiff and delaying and hindering the operation of the railroad, sued out a writ and caused an officer thereunder to arrest the body of Collins, the engineer, by stopping the train for that purpose.

The third plea alleges that the defendant had a legal cause of action against Collins which was equally enforceable against the plaintiff founded upon the negligence of Collins, the plaintiff's servant, in causing the injury to said heifer; that suit thereon was brought against Collins tortwise; that the defence to such suit was assumed by the plaintiff in behalf of Collins, and therein the question whether said heifer was unlawfully and by the defendant's fault upon said railroad track was litigated, and that it was adjudged in such suit that said Collins was in the wrong, and judgment was entered in favor of the now defendant against Collins; and that the arrest of Collins upon the writ in said cause was in pursuance of the defendant's legal right, and no more was done than was necessary to that end.

The question raised and argued before us was whether an officer having a legal process in which he is commanded to arrest the body of the defendant may stop a railroad train for the purpose of making an arrest of the engineer of such train. The defendant in his brief says: "The question submitted is this, had the officer the legal right to stop the train for the purpose of arresting Collins?" The plaintiff in its brief says: "This case is not to be decided upon the theory that the plaintiff's only claim to recover rests upon the fact that as an incident of the arrest he lost the service of an employee. That is not the claim we press. The question is *one of public policy*." The court below sustained the demurrer on the ground that the officer had no right to stop the train to arrest the body of the engineer upon civil process against him.

It is conceded by the plaintiff that an officer having proper process might lawfully stop a train to arrest its engineer in a criminal proceeding, but the argument is that in civil proceedings, the consequences are, or in conceivable cases, might be so detrimental to the public using the railroad, the court should hold, on grounds of public policy, that the right does not exist.

The process was a legal one commanding the officer to arrest Collins. The command in the process was the command, not of Hunt, but of the law. The officer did not act in making the arrest because Hunt commanded him, but because the law commanded him. Hunt to be sure had invoked the issue of the process, but the sheriff's justification and authority was the command of the process.

Cases may easily be conceived in which, upon considerations of relative convenience and inconvenience, the stopping of a train to serve a justice writ upon its engineer would seem to be ridiculous. But, on principle, would it be any more so, if the train was stopped to serve a writ upon the engineer claiming ten dollars in damages for an assault and battery, than stopping it to arrest him in a criminal proceeding seeking to impose a fine of ten dollars upon him for the same assault? It will hardly do to rest the question upon conjectural difficulties. If it is a question of public policy, it is so because its usual, normal and legitimate consequences are hurtful to the public. As a practical fact there is little danger that officers will have occasion to stop a train for the service of process of any kind. Again, it is conceded that the officer might arrest the engineer at a station on the road. But this would delay the train just as long and work precisely the same inconvenience to the public as stopping it between stations.

It is admitted that an officer might stop a stage coach to arrest the driver. This conceivably might delay the passengers on their way to a railroad station so that they fail to reach a train that their business requires them to take. What is the difference in principle between an act which hinders the passengers

on a public conveyance to the train and an act which hinders him while *on* the train?

If the question is one of public policy it must apply generally to public carriers. But we think the right to arrest cannot be defeated upon any considerations that public policy forbids its exercise in the case of locomotive engineers. The command of the process is the voice of the law speaking to its officer. It is the order of the State of Vermont to do the act complained of. There is no room for the doctrine of public policy in such a case. It is illogical and absurd to say that the command of the law cannot be executed because on grounds of public convenience or expediency, the court thinks it better to nullify the law.

The plea alleges that the defendant's cause of action existed against the plaintiff as well as Collins. The suit for the injury to the heifer might have been maintained against the railroad company. Had it been so brought and had the officers stopped the train to attach railroad property on board, the same mischievous consequences to the public would have resulted as those now portrayed. Can it be claimed that process against a railroad company is not to be served, as it may be against other defendants because it will work inconvenience to the public? Process served upon an individual may work incidental injury to others. If a physician is arrested, his patients may suffer.

It is quite apparent that the argument that public policy forbids the service of process as made in this case is unsound and illogical. The legislature can establish any regulations in the premises that may be needed.

The judgment is reversed and judgment is rendered that the demurrer be overruled and the third plea is sufficient. The cause is remanded with leave to the plaintiff to replead on the usual terms.