# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE.

The General Court has the right to appropriate money to pay to the widow, heirs, or legal representatives of a person who died while holding an office, the salary of which is payable from the treasury of the Commonwealth or from the treasury of a county, city, or town, the salary, for any period of time after such decease, to which such person would have been entitled if living and continuing to hold such office, if it fairly can be thought that the public good will be served by the grant of such an unstipulated reward, but it has not that right where the only public advantage is such as may be incident and collateral to the relief of a private citizen; and it has the right to authorize a county, city, or town to appropriate money to pay to the widow, heirs, or legal representatives of a person who died while holding an office, the salary of which is payable from the treasury of such county, city, or town, the salary, for any period of time after such decease, to which such person would have been entitled if living and continuing to hold such office, assuming that if the General Court should confer such a power in any case it would so far specify the object and occasion as to adjudicate that they were sufficient to warrant an expenditure for the public good.

ON May 22, 1900, the following order was adopted by the Senate and was transmitted on the following day to the Justices of the Supreme Judicial Court, who, on June 5, 1900, returned the answer which is subjoined.

Ordered, That the opinion of the Justices of the Supreme Judicial Court be required by the Senate upon the following important questions of law:

1. Has the General Court the right to appropriate money to pay to the widow, heirs or legal representatives of a person who died while holding an office, the salary of which is payable from the treasury of the Commonwealth or from the treasury of a county, city or town; the salary, for any period of time after such decease, to which such person would have been entitled if living and continuing to hold such office?

2. Has the General Court the right to authorize a county, city or town to appropriate money to pay to the widow, heirs or legal representatives of a person who died while holding an office, the salary of which is payable from the treasury of such county, city or town, the salary, for any period of time after such decease, to which such person would have been entitled if living and continuing to hold such office?

The undersigned, Justices of the Supreme Judicial Court, having considered the questions proposed by the Honorable Senate, by its order of May 22, 1900, a copy of which is annexed, respectfully submit the following opinion.

The questions, as we understand them, both assume that there was no provision of law in existence before the death of the officer by which the money in question would be payable as supposed. If such a provision should be enacted with regard to the widow, heirs, or legal representatives of a living officer, it naturally would be regarded as pledging the faith of the State to the officer himself, and thus as constituting part of the consideration for his future service. We understand the questions to refer to payments which technically are pure gratuities. We also understand them to refer to payments of money raised by taxation in the ordinary way.

In general the power to pay gratuities to individuals is denied to the Legislature by the Constitution. Ordinarily a gift of money to an individual would be an appropriation of public funds to private uses which could not be justified by law. *Mead* v. *Acton*, 139 Mass. 341. *Lowell* v. *Boston*, 111 Mass. 454. *Freeland* v. *Hastings*, 10 Allen, 570. *Loan Association* v. *Topeka*, 20 Wall. 655. *Parkersburg* v. *Brown*, 106 U. S. 487, 500, 501. *Cole* v. *La Grange*, 113 U. S. 1, and cases cited there and in *Kingman* v. *Brockton*, 153 Mass. 255, 259. Cooley, Const. Lim. (6th ed.) 601, 602. We deem this proposition so plain that we do not delay to enforce it; but it is not a proposition which disposes of the questions before us. For it is hardly less clear that when a public purpose can be carried out or helped by spending public money, the power of the Legislature is not curtailed or destroyed by the fact that the money is paid to private persons who had no previous claim to it of any kind.

We need not illustrate by cases where the payment is made on the footing that there would have been an obligation had not one party been the sovereign power, and where the public advantage is in the manifestation that the sovereign power is just. We will take a case which is in the strictest sense a gift. A conspicuous example which occurs to every one is the granting of military pensions after a war. The soldiers have been paid all to which they are entitled, yet the State may grant them a partial or total support for disabilities contracted in service. Such a gift may be intended primarily for an object which is no more private than is a memorial hall. *Kingman* v. *Brockton*, 153 Mass. 255, 256. It may be meant to bring home to all minds by visible facts that now, as of old, the courage of the battlefield is honored, and that if a man will risk his life for his country, his country afterwards will not necessarily hold him to the letter of his generous bond and deem him fully paid at thirteen dollars a month.

In the language of the Supreme Court of the United States, the " power to grant pensions is not controverted, nor can it well be, as it was exercised by the States and by the Continental Congress during the war of the Revolution ; and the exercise of the power is coeval with the organization of the government under the present constitution, and has been continued without interruption or question to the present time." *United States* v. *Hall*, 98 U. S. 343, 346. See *Frisbie* v. *United States*, 157 U. S. 160, 166 ; *Kellogg* v. *Waite*, 12 Allen, 529, 530.

If the power of Congress is unquestioned, that of the State legislatures under their broader authority is still less questionable, subject to some inquiry as to what would be legitimate occasions for exercising it, for which we need not stop. On January 16, 1781, it was resolved that there be allowed and paid to the non-commissioned officers and soldiers " who were engaged to serve during the war on or before the second day of December last, the sum of twenty-four dollars in silver or gold equivalent thereto as a gratuity . . . as a testimony of the sense this Commonwealth entertains of their faithful services." Resolves, 1780, January session, c. 9. See c. 39 and c. 240. There were many special resolves of the same kind. So far as we have seen expressions of opinion by the courts of other States, they agree

with what we have quoted from the Supreme Court of the United States, and with what is to be inferred from the practice of our own Legislature within four months of the time when the Constitution had come into force. *Booth* v. *Woodbury*, 32 Conn. 118, 128. *Speer* v. *Blairsville*, 50 Penn. St. 150, 162. *Durach's appeal*, 62 Penn. St. 491, 494. *Brodhead* v. *Milwaukee*, 19 Wis. 624, 652. See also Cooley, Taxation, (2d ed.) 111; 1 Hare, Am. Const. Law, 387.

If further justification for the power to grant military pensions be needed, Article 6 of the Bill of Rights recognizes that advantages distinct from those of the community may be conferred upon the consideration of services rendered to the public. And although in *Brown* v. *Russell*, 166 Mass. 14, 22, 23, it was intimated as the prevailing view of the court that, so far as these words were applicable to the filling of public offices, they must be taken to refer to services to be rendered, that conclusion was drawn from the dependence of the advantages upon the office, not from a general construction of the words. That the words include past as well as future services is shown by the authorities and facts to which we have referred, and perhaps is indicated by the mention of rewards and immunities in chapter 5, section 2, of the second part of the Constitution.

The power to give rewards after the event for conspicuous public service, if it exists at all, cannot be limited to military service. If a man has deserved greatly of the Commonwealth by civil services, the public advantage of recognizing his merit may stand on ground as strong as that for rewarding a general. We cannot foresee the possibilities of genius or distinguished worth and settle in advance the tariff at which its action shall be paid.

It will be plain from what we have said that in our opinion the public welfare alone must be the ground, as it is the only legal justification, for this kind of payment. And it follows that our answer to the first of the two questions before us is that the General Court has the right to appropriate money for the purposes supposed in a case where it fairly can be thought that the public good will be served by the grant of such an unstipulated reward, but that it has not that right where the only public advantage is such as may be incident and collateral to the relief

of a private citizen. To a great extent the distinction must be left to the conscience of the Legislature. Whether a judicial remedy could be found if a clear case should arise of an unconstitutional appropriation, it happily is unnecessary to inquire.

We make no different answer to the second question, and have not found it necessary to consider distinctions between what the Legislature can do, as representing the sovereign power, and what it can authorize counties, cities, or towns to do ; we assume that if the General Court should confer such a power in any case it would so far specify the object and occasion as to adjudicate that they were sufficient to warrant an expenditure for the public good. The ground of decision in *Mead* v. *Acton*, 139 Mass. 341, which certainly went very far, was not a distinction between the direct and indirect action of the Legislature, but was that, because the war had been over so long, it was manifest that the public welfare could not be promoted by the payment of the proposed bounties, and therefore a statute attempting to authorize such a payment by any one attempted to divert public funds to private uses and was void. Possibly other reasons could have been invoked. Some of the language used in that case and in *Kingman* v. *Brockton*, 153 Mass. 255, may need qualification. It goes beyond the point which the court was called upon to decide.

OLIVER WENDELL HOLMES.
MARCUS P. KNOWLTON.
JAMES M. MORTON.
JOHN LATHROP.
JAMES M. BARKER.
JOHN W. HAMMOND.
WILLIAM CALEB LORING.

Boston, June 5, 1900.