ANNA GROSS *v.* BENJAMIN GATES, AUDITOR OF ACCOUNTS.

May Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed October 5, 1937.

158

*Wilson, Carver, Davis & Keyser* for the petitioner.

*Lawrence C. Jones,* Attorney General, for the petitionee.

SHERBURNE, J. This is a petition for a writ of mandamus to compel the auditor of accounts forthwith to issue his warrant in favor of the petitioner in compliance with No. 246 of the Acts of 1937, which provides as follows: "The auditor of accounts is hereby directed to issue his warrant for the sum of three thousand dollars in favor of Anna Gross of Richford, widow of Otis J. Gross, late of said Richford, who was murdered September 24, 1934, while acting in the capacity of a deputy sheriff, by a person then under arrest and in his custody. Said money is to be paid to compensate said Anna Gross for the loss of her husband's earnings, burial expenses, and to assist in her support and the support of a minor child." The petition sets forth the facts in substantial agreement with those recited in the act, and in addition shows that said Otis J. Gross was then and long had been a deputy sheriff of outstanding and conspicuous ability, trustworthiness and character; that on said date he received a civil writ issued out of the Franklin municipal court, which contained a *capias* directing and commanding him to apprehend the body of one Michael Pope, the defendant in said writ, and him safely keep so as to have him in court to answer to the complaint of the plaintiff therein; and that while lawfully engaged in making service of said writ and attempting to apprehend the body of the said Pope, he was shot to death by him.

To this petition the defendant has demurred upon the ground that said act is unconstitutional and void, for that it was enacted for a private rather than a public purpose, and thus violates the provisions of Articles 7th and 9th of chapter I of the Vermont Constitution, which, so far as here material, respectively provide:

> Article 7th. "That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community."

> Article 9th. "* * * previous to any law being made to raise a tax, the purpose for which it is to be raised ought to appear evident to the Legisla-

ture to be of more service to community than the money would be if not collected.''

No question is, or can be, made but that the defendant has the right to raise the constitutional question here presented. *City of Montpelier* v. *Gates et al.*, 106 Vt. 116, 125, 170 Atl. 473.

It is clear from the quoted portions of our Constitution that in general the power to pay gratuities to individuals is denied to the Legislature. Under Article 9th the purpose for which a tax is raised must be a public purpose. *City of Burlington* v. *Central Vermont Railway Co.*, 82 Vt. 5, 10, 71 Atl. 826. And the right of the Legislature to appropriate the public funds is no greater than its right to tax. Cooley on Taxation, 4th ed., sec. 177; *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278; *Hager* v. *Kentucky Children's Home Soc.*, 119 Ky. 235, 83 S. W. 607, 67 L. R. A. 815.

Ordinarily, a gift of money to an individual would be an appropriation of public funds to private uses, which could not be justified by law. *Opinion of Justices*, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564; *Opinion of Justices*, 240 Mass. 616, 136 N. E. 157, 23 A. L. R. 610; *Citizens Sav. & L. Asso.* v. *Topeka*, 20 Wall. 655, 22 L. ed. 455; *Parkersburg* v. *Brown*, 106 U. S. 487, 27 L. ed. 238, 1 Sup. Ct. 442; *Cole* v. *Lagrange*, 113 U. S. 1, 28 L. ed. 896, 5 Sup. Ct. 416. But a state may make an appropriation in discharge of a moral obligation resting on it, and such an appropriation must be regarded as being for a public purpose and within the constitutional powers of the Legislature; and the fact that a private person may receive the benefit of such an appropriation does not constitute the act of appropriation a private one. 25 R. C. L. 402. Here the public advantage is in the manifestation that the sovereign power is just. *Opinion of Justices*, *supra*, 175 Mass. 599, 57 N. E. 675. This rule has been recognized and applied in the following cases which have upheld the power of the state to appropriate money for the relief of one injured while in its service: In *Munroe* v. *State*, 223 N. Y. 208, 119 N. E. 444, the injured person was working as an electrician in a state hospital and was struck and injured by a patient; In *Babcock* v. *State*, 190 App. Div. 147, 180 N. Y. S. 3, affirmed in 231 N. Y. 560, 132 N. E. 888, the injured person was an engineer in the highway department and fell

while engaged in descending a cliff in the performance of the duties of his position; In *Woodall* v. *Darst, supra,* a member of the national guard was injured while on duty going to the state encampment; In *Fairfield* v. *Huntington,* 23 Ariz. 528, 205 Pac. 814, 22 A. L. R. 1438, the injured man was an employee in the state highway department; In *Wyoming ex rel. McPherren* v. *Carter,* 30 Wyo. 22, 215 Pac. 477, 481, 28 A. L. R. 1089, an appropriation for the relief of the widow of an undersheriff, who was killed while participating in a raid upon, and attempting the arrest of, alleged violators of the prohibitory liquor act, was sustained.

██ For over one hundred years our Legislature has been enacting special acts for the relief of persons injured while in the employ of the State, including members of the militia injured while on duty. This, in effect, is a legislative construction that the Constitution authorizes such appropriations. There can be no question but that the Legislature has power to appropriate money for the relief of those injured while in the actual service of the State. No case, however, has been called to our attention where the authority of a state to make an appropriation for the relief of a public officer injured in the service of civil process, or for his widow and family when killed, has been passed upon. Consequently it is necessary to explore the nature of such employment.

██ Under P. L. 3403 a deputy sheriff is appointed by the sheriff; he must take an oath, and his deputation and oath must be filed for record in the office of the county clerk. By P. L. 3405 he may, and when required, shall perform any official duty which may be required of the sheriff, and returns of his acts and doings shall be signed by him as a deputy sheriff, and his official acts shall be deemed to be the acts of the sheriff. The provisions of P. L. 3389 that a sheriff "shall serve and execute lawful writs, warrants and processes directed to him, according to the precept thereof," apply to him. By P. L. 1495 he shall have the same powers and be subject to the same liabilities in the service of process as a sheriff, whether the process is directed to the sheriff or the deputy. The provisions of P. L. 1499 that "sheriffs shall receive all writs and precepts issuing from lawful authority, at any time and place within their respective precincts, unless they can show reasonable cause to the contrary, and shall

162

execute and return the same agreeably to the direction thereof,'' and of P. L. 1500 that ''a sheriff who wilfully refuses or neglects to serve or return such writ or precept * * * shall be fined not more than one hundred dollars and pay to the party aggrieved damages sustained thereby, with costs,'' apply to him. By P. L. 1494 he ''may serve process, either civil or criminal, anywhere within the State, returnable to any court.'' He is not merely a process server, he is also a peace officer. P. L. 3395.

██ ██ By our statutes he is recognized as a public officer. *Eastman* v. *Curtis,* 4 Vt. 616, 621; *Ferris* v. *Smith,* 24 Vt. 27. To him, as a public officer, is entrusted a portion of the sovereign authority of the State, and his duties are performed in the execution of the law, in the exercise of power and authority bestowed by law. *Attorney General* v. *Tillinghast,* 203 Mass. 539, 89 N. E. 1058, 17 Ann. Cas. 449; *Attorney General* v. *Drohan,* 169 Mass. 534, 48 N. E. 279, 61 A. S. R. 301; *State ex rel. Barney* v. *Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583; *Opinion of Justices,* 73 N. H. 621, 62 Atl. 969, 5 L. R. A. (N. S.) 415, 6 Ann. Cas. 283; 22 R. C. L. 374.

██ The party at whose instance a writ or execution has issued, or his attorney, has the right to give the officer directions as to how they shall be executed, which directions, when not in conflict with the law, the officer is bound to follow. 57 C. J. 783; *Tucker* v. *Bradley,* 15 Conn. 46; *Kimball* v. *Davis,* 19 Me. 310; *Peirce* v. *Partridge,* 3 Metc. (Mass.) 44; *Coggeshall* v. *Varnum,* 19 Pick. (Mass.) 422; *Smith* v. *Judkins,* 60 N. H. 127; *Lynch* v. *Com.,* 16 Serg. & R. (Pa.) 368, 16 A. D. 582. The officer, in such case, is not bound to serve the writ in any other manner than according to directions given him. *Ordway* v. *Bacon,* 14 Vt. 378; *Abbott* v. *Edgerton,* 30 Vt. 208. When, however, a party assumes to give special instructions to an officer in regard to the execution of process in his hands, different from his legal duty, the officer ceases to be a public officer, as to the business so entrusted to him, and becomes a private agent. *Willard* v. *Goodrich,* 31 Vt. 597. But when no special instructions are given it is the duty of the officer to serve a valid writ according to its precept and agreeably to its direction. *Hill* v. *Pratt,* 29 Vt. 119, 124. And when the party does not direct or control the course of the officer, nor ratify his acts, he is not liable for any wrong of the officer. *Hyde* v. *Cooper,* 26 Vt. 552; *Abbott*

v. *Kimball,* 19 Vt. 551, 47 A. D. 708; *Carleton* v. *Taylor,* 50 Vt. 220, 227; *Evarts* v. *Hyde,* 51 Vt. 183, 192.

The process under which Gross acted as a deputy sheriff was a legal one. It followed the statutory form and was directed to any sheriff or constable in the State. It commanded him to arrest Pope by the authority of the State of Vermont. The command in the process was the command not of the plaintiff in the writ, but of the law. Gross. did not attempt to arrest Pope because of the command of the plaintiff therein, but because the law commanded him. It was the order of the State of Vermont. Although the plaintiff therein had invoked the issue of the process, the officer's justification and authority was the command of the process. *St. Johnsbury & Lake Champlain R. R. Co.* v. *Hunt,* 60 Vt. 588, 15 Atl. 186, 1 L. R. A. 189, 6 A. S. R. 138.

In some of our cases we have said that the officer is the agent of the plaintiff in the writ. Thus in *Felker* v. *Emerson,* 17 Vt. 101, the defendant, a deputy sheriff, claimed a lien for his services upon property which he had attached after the attachment had been dissolved by a settlement of the suit in which the attachment had been made; and the opinion states that in making the attachment the officer is the agent and servant of the plaintiff, and goes on to explain the nature of the officer's lien and how it may be lost or perfected. In *Dana* v. *Lull,* 21 Vt. 383, the defendant, an officer, had attached property upon a writ, and the opinion states that the officer holds it in the right of the creditor and for his benefit, and that the attachment is entirely under the control of the creditor, and then uses these words: "The sheriff under such circumstances, though in one sense the agent of the law, and acting as a public officer, is still considered as the agent of the creditor and acting for him and under his control and direction." In *Cutler* v. *Jennings,* 99 Vt. 85, 130 Atl. 583, 584, the defendant, a deputy sheriff, after conducting a chattel mortgage sale for the plaintiff had a sum of money left over, which he claimed to hold on an attachment of the mortgaged property in favor of one Flood, but as this sum had been awarded to the plaintiff in a real estate foreclosure against the same mortgagors, to which Flood had been made a party defendant, it was held that the officer stood no better than Flood would, and the opinion goes on to state:

164

"Though he acted as an officer in making the attachment, and in a sense was an agent of the law, in another and true sense he was acting as Flood's agent. * * * He had no interest in the property attached that Flood could not discharge. * * * He has no interest in the fund in question; he holds it for the person who is in law entitled to it." Nowhere in these cases is it questioned that the officer acts by command of, and by virtue of authority from, the State. As he must be disinterested and impartial he lacks the usual characteristic of a private agent, which implies an interest favorable to one party and adverse to the other. *Knight* v. *Herrin,* 48 Me. 533. This disinterest is recognized by P. L. 1497, which forbids him to serve a writ in a cause where he is interested. He is the agent of the law, and to the extent that he is also an agent of the plaintiff it is not of his own appointment. *Sims* v. *Campbell,* 1 McCord Eq. (S. C.) 53, 16 A. D. 595. As said in *Woodbury* v. *Parker,* 19 Vt. 353, 47 A. D. 695, and quoted in *Caswell* v. *Jones,* 65 Vt. 457, 461, 26 Atl. 529, 20 L. R. A. 503, 36 A. S. R. 879, cases like *Knight* v. *Herrin, supra,* arising out of execution sales, "According to all the authorities such an officer, in addition to his character as a minister of the law, is regarded as a sort of trustee and agent both for the creditor and the debtor. The two characters place him on higher and more responsible ground than a mere private trustee or agent."

Every presumption is to be made in favor of the constitutionality of a statute, and it is not to be adjudged unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *State* v. *Clement National Bank,* 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22; *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 343, 348, 129 Atl. 159, 39 A. L. R. 1222; *Clark* v. *City of Burlington,* 101 Vt. 391, 397, 143 Atl. 677; *Village of St. Johnsbury* v. *Aron,* 103 Vt. 22, 27, 151 Atl. 650; *Central Vermont Ry., Inc.* v. *Campbell,* 108 Vt. 510, 192 Atl. 197.

Although Gross, in the service of the writ as a result of which he was murdered, was not in the direct service of the State, as in the other cases cited, yet he was performing a public function, which he could not refuse, and in attempting to make an arrest necessarily ran some personal risk. It is true that the fees an officer receives generally compensate him adequately

for his services, but in fixing these fees it is improbable that the Legislature had in mind that life or limb should be sacrificed for them. It should not be overlooked that the office of deputy sheriff demands more than ordinary intelligence, tact, courage and honesty, and that it is to the public interest that persons endowed with such attributes be induced to accept appointment to the office.

 Under all the circumstances we are unable to say that the Legislature may not have rightfully considered that the State was under a moral obligation to Gross' dependents. As said in *Wyoming ex rel. McPherren* v. *Carter, supra,* quoting from *Munroe* v. *State, supra,* ''When a man gives his services or his property to the state under such circumstances that no liability would be created to pay therefor, even if the state were an individual or a private corporation, the legislature may allow such a claim in good morals and fair dealings. * * * Why should there not be a like moral obligation to make some recompense to the man who, in his work for the state, by an unforeseen accident, has given his life or limb? The moral obligation may be as urgent in the one instance as the other.'' This reasoning is also applicable to a public officer acting by command of the law, although it happens that he is executing process for the benefit of a private individual, rather than the State.

*Judgment that the prayer of the petition be granted, without costs, and that a mandate issue directing the auditor of accounts to issue his warrant for the sum of three thousand dollars in favor of the petitioner.*

SLACK, J. (dissenting). I am unable to concur in the result reached by my associates. My sympathies are with the petitioner, but, in my opinion, the law is not.

It does not appear from the act in question that the deceased was murdered while engaged in serving a body writ for a private individual, by the defendant named therein; but it does from the petition, and the case has been presented and disposed of on that assumption.

I do not question the authority of the Legislature to appropriate money for the relief of those injured while in the actual service of the State, or for the relief of their families. Such legislation is sustained on the ground that the State is thereby

discharging a moral obligation that rests upon it which constitutes a public purpose within the meaning of constitutional provisions similar to Article 9 of our Constitution. I deny, however, that any such obligation rests upon the State in the instant case. The deceased was not acting for the State when killed, but for a private individual, the plaintiff in the writ he was then attempting to serve. While the State had clothed the deceased with authority to act in the capacity in which he was acting when killed, for anyone who might require his services, and he was liable for a fine if he wilfully refused or neglected so to do, that did not obligate the State, morally or otherwise, to pay him for injuries he received while so acting. And it logically follows that the State was under no moral obligation to compensate the petitioner. The fact that deceased was murdered while in the discharge of his duty adds nothing to the merits of petitioner's claim from a legal standpoint. It is the fact that he was killed, and not the manner in which it was done, that furnishes the basis for this claim, if there is one. The claim would have been just as meritorious if he had been killed by a wild beast or in an automobile accident. If the State has authority to compensate the widow, or family, of an officer killed while serving civil process, it has like authority to compensate such officer, if he survives, for injuries received while so engaged. And sheriffs, their deputies and families do not constitute a favored class. The State owes them no greater obligation than it does constables, all civil process servers and their families. Constables, like sheriffs, must be sworn before entering upon the duties of their office, P. L. 3452, and may serve process, either civil or criminal, anywhere within the State, returnable to any court. P. L. 1495. They have the same powers and are subject to the same liabilities and penalties as sheriffs, P. L. 1496, and like them are penalized for wilful neglect to perform the duties imposed upon them by law. P. L. 8714. They serve the same form of process that sheriffs do, in the same manner, and encounter like risks in so doing. While in the service of civil process, both are acting under the command of the law, and in the exercise of power and authority bestowed thereby, in a certain sense, in a far greater sense they are acting under the command and in the exercise of authority conferred upon them by those who employ and pay them. That

this is so appears from the majority opinion, and cases cited. The command of the law in the instant case is no more imperative than that found in all writs of attachment, summons and replevin, in venires, citations, subpoenas, etc. In each and all of these the command is, ''By the authority of the State of Vermont you'' do thus and so. I cannot believe that the framers of our Constitution, who lived in an age when money was scarce, and obtainable only by the most exacting efforts, intended to make it possible for every sheriff and constable in the State who might be injured, in any way, while serving a subpoena in a civil case for a private individual, to reach the pocketbook of the taxpayers in this manner, through the medium of a sympathetic Legislature; and the fact that it never was attempted before, in this State or elsewhere, so far as is known, indicates pretty plainly how the lawmakers, and the people in general, regarded the matter prior to the present era of unrestricted donations.

If the act is constitutional we, of course, have no concern respecting the wisdom of it; but since I have no doubt that it is not, I would sustain the demurrer.