STARK HICKEY, INC., *v.* STANDARD ACCIDENT
INSURANCE CO.

1. TRIAL—CREDIBILITY OF WITNESSES FOR JURY.
   The credibility of the witnesses is for the jury to determine where
   there is a conflict of testimony.

2. SHERIFFS AND CONSTABLES—OFFICIAL BOND—SUBSTANTIAL COMPLIANCE WITH STATUTE.
   A constable's bond containing the requirement that the constable
   should "well and faithfully perform all the duties of his said
   office during the term as aforesaid, as required by law," is a
   substantial compliance with the directory statute and binds the
   surety (1 Comp. Laws 1929, § 1020). .

3. SAME—AUTOMOBILES—FRAUDULENT BILL OF SALE—FINDING BY
   JURY.
   Finding by jury in action against constable and surety on his
   bond that execution of bill of sale of stolen automobile by the
   constable and another was fraudulent *held*, sustained by testimony where statutory formalities, such as publication of claim
   of lien in the manner and for the period prescribed by law had
   not been complied with and he had been informed that the
   garage keeper's lien, as recited in the bill of sale, was nonexistent (1 Comp. Laws 1929, § 4794).

4. SAME—FORECLOSURE OF GARAGE KEEPER'S LIEN—APPARENT SCOPE
   OF AUTHORITY.
   Conducting a sale upon foreclosure and signing bill of sale of an
   automobile to satisfy a garage keeper's lien is within the
   apparent scope of the authority of a constable, are acts frequently performed by constables and are not acts foreign to
   that office (1 Comp. Laws 1929, § 4794).

5. SAME—FRAUD—APPARENT SCOPE OF AUTHORITY.
   A constable who undertakes to perform a lawful act within the
   apparent scope of his authority must complete the transaction
   in a lawful manner and neither by virtue of, nor by color of,
   his office, perpetrate a fraud upon innocent third parties.

6. SAME—FRAUD—MISFEASANCE.

Constable who signed a fraudulent bill of sale of an automobile as "constable and agent" did not thereby act in his private capacity as an agent for the vendor or alleged lien holder, hence surety was liable to person unlawfully injured by constable's misfeasance (1 Comp. Laws 1929, §§ 1020, 4794).

7. SAME—OFFICIAL BOND—LIABILITY OF SURETY.

A surety on the official bond of a constable is liable to all persons who are unlawfully injured by the officer's misfeasance whether accomplished by *virtute officii* or *colore officii* (1 Comp. Laws 1929, § 1020).

8. OFFICERS—MISFEASANCE DEFINED.

Misfeasance of an officer is his performance of an act which might be lawfully done, in an improper manner, by which another person receives an injury.

9. SAME—OFFICIAL ACTS.

An official act is an act done by an officer in his official capacity under color and by virtue of his office.

10. SHERIFFS AND CONSTABLES—MISFEASANCE—ILLEGAL SALE OF AUTOMOBILES.

Constable who assumed to be acting officially in conducting and consummating an illegal sale of an automobile and who would not have acted had it not been for fact that his official character would be recognized by department of State in transferring title to car *held*, guilty of misfeasance in so acting (1 Comp. Laws 1929, § 1020).

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Question as to whether party from whose possession a stolen car was taken was a proper party plaintiff in action against a constable and the surety on his official bond because of lack of privity, not having been raised in the trial court but raised in appellee's brief, comes too late to be passed upon by Supreme Court.

Appeal from Wayne; Skillman (W. McKay), J., presiding. Submitted October 4, 1939. (Docket No. 26, Calendar No. 40,540.) Decided December 19, 1939.

Action by Stark Hickey, Inc., against Standard Accident Insurance Company and Jack Altman for damages sustained through misfeasance of Altman acting as a constable in sale of automobile for satisfaction of alleged garage keeper's lien. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed.

*Ralph E. Routier* (*Morton A. Adinoff*, of counsel), for plaintiff.

*Lightner, Crawford, Sweeny, Dodd & Mayer* (*George D. Haller*, of counsel), for defendant Standard Accident Insurance Company.

CHANDLER, J. Plaintiff brings this suit against defendant Standard Accident Insurance Company, a Michigan corporation, to recover for an alleged breach of the official bond of one Jack Altman, a duly elected constable of Sumpter township, Wayne county, Michigan, on which bond defendant was surety.

From the agreed statement of facts, it appears that a certain Ford automobile was stolen April 30, 1936, at Toledo, Ohio, by some undisclosed person, and the motor number changed. This car, on or shortly prior to May 6, 1936, was placed in the possession of Adam Schemanske, an auto parts dealer, doing business as Adams Auto Parts, at his place of business in Detroit, Michigan, by one Davis, a constable, under an arrangement whereby Schemanske was to procure a purchaser.

Mr. Beglinger, a used car dealer, saw the car and submitted a bid for it. On May 6, 1936, both Beglinger and Schemanske went to the constables' office in downtown Detroit to complete the purchase. Beglinger gave Davis a check for $350 and received

a bill of sale, signed by "Jack Altman, constable and agent," which was duly notarized, said bill of sale purporting to be based upon the foreclosure of a garageman's lien held by Schemanske. The latter had no such lien, and testified that he protested this fact at the time of sale but was assured by Altman and Davis that such statement in the bill of sale was just a "matter of form." His further testimony, however, is to the effect that while both constables were present when the foregoing protest was made, he cannot remember which person declared the statement of lien to be a matter of form. Nevertheless, both Schemanske and Beglinger testified that Altman and Davis were working together in the matter.

Beglinger testified that he did not know the car was stolen; that he did not know there was no lien, and was unaware that the sale was not regular throughout. Schemanske, however, testified that Beglinger was informed that there was no lien. Where there is a conflict of testimony, the court has frequently held that the credibility of the witnesses is for the jury to determine. *Davis* v. *Belmont Creamery Co.*, 281 Mich. 165; *Ames* v. *MacPhail*, 289 Mich. 185.

Beglinger, on the basis of the bill of sale signed by Altman as "constable and agent," obtained a transfer of title from the office of the secretary of State. Through successive transactions the car came into the possession of the plaintiff in this action, who paid a valuable consideration for the same. While the car was in the possession of the plaintiff at its place of business, police officers from the city of Detroit seized it as a stolen car and plaintiff suffered loss thereby for which it instituted this action against Altman, the constable, and defendant,

his surety. Later the case was discontinued as to Altman for the reason that no service of process could be obtained upon him.

Defendant's motion for a directed verdict, made at the conclusion of plaintiff's case, was taken under advisement by the court. The jury returned a verdict for plaintiff in the sum of $484. Defendant thereupon moved for entry of judgment *non obstante veredicto* which was granted by the court. Plaintiff appeals.

The bond on which defendant's liability is sought to be predicated provides, in part, as follows: "the condition of the above obligation is such, that if the above bounden principal shall well and faithfully perform all the duties of his said office during the term as aforesaid, as required by law, then this obligation shall be null and void; otherwise to be and remain in full force and virtue." The statute relative to constables' bonds (1 Comp. Laws 1929, § 1020 [Stat. Ann. § 5.72]) provides that in such instruments "said constable and his sureties shall jointly and severally agree to pay to each and every person who may be entitled thereto, all such sums of money as the said constable may become liable to pay on account of any neglect or default of said constable in the service or return of any process that may be delivered to him for service or collection, or on account of any misfeasance of the said constable in the discharge of, or failure of said constable to faithfully perform any of the duties of his said office." The statute is directory and substantial compliance therewith binds the surety. *Kosowsky* v. *Fidelity & Deposit Co. of Maryland,* 245 Mich. 266.

The verdict of the jury indicates, and the opinion of the trial court specifies, that execution of the bill of sale by Constable Altman was fraudulent. Both

Altman and Davis were working together. There was no compliance with statutory formalities, such as publication of claim of lien in the manner and for the period prescribed by law. (1 Comp. Laws 1929, § 4794 [Stat. Ann. § 9.1712]) Altman had been informed that the garage keeper's lien was nonexistent.

The reasons relied upon by the trial court in entering judgment for defendant *non obstante veredicto* were that Altman, in executing the bill of sale, was not acting by virtue of his office because such act was not within the apparent scope of his authority. The court said, "There was no failure to perform a duty, because there was no duty. He was acting merely as the vendor's agent or the agent of the lien holder, and therefore there was no assumption of power not possessed by a constable under guise of official action."

One of the principal contentions of the defendant, and an argument which was given much weight by the trial court, is the fact that there is no requirement under the garage keeper's lien statute that such sales be made by a constable. 1 Comp. Laws 1929, § 4794 (Stat. Ann. § 9.1712). Said statute provides in part as follows: "said garage keeper may advertise and sell said automobile or other motor propelled vehicle at public auction in the same manner and after the same notice required in sales of property seized on chattel mortgages." The chattel mortgage statute (3 Comp. Laws 1929, § 13424, as last amended by Act No. 129, Pub. Acts 1935 [Comp. Laws Supp. 1935, § 13424, Stat. Ann. § 26.929]) contains no requirement that chattel mortgage sales be made by the constable. From this it is argued that there being no statutory command making it the duty of constables to conduct garage keepers' lien

sales, there can be no breach of duty in connection with said sales which a constable voluntarily undertakes to perform.

An employee of the title division of the department of State testified that it was customary for that office to require a constable's bill of sale as a condition precedent to the issuance of a title transfer, but, on further examination, the witness conceded that a bill of sale signed by a sheriff, deputy sheriff, or judge of a court of record would be acceptable. As to bills of sale signed by other officials, the witness stated as to some that they would not be considered satisfactory, and as to certain others, he was not sure.

However, if, as a matter of law, as asserted by defendant, any person can handle a garage keeper's lien sale, it is difficult to see how this relieves a constable or his surety from liability in a case where said constable has undertaken to hold such sale, and, under color of his office, conducts the sale in a fraudulent manner. It is not contended that Altman exceeded his authority as a constable in conducting the sale and signing the bill of sale. It was a lawful act within the apparent scope of his authority, an act frequently performed by constables in this State, and an act not foreign to the office. Having undertaken to perform a lawful act within the apparent scope of his authority, it became the constable's duty to complete the transaction in a lawful manner, and neither by virtue of, nor by color of, his office, perpetrate a fraud upon innocent third parties.

It is claimed by the appellee that Altman was acting in his private capacity as an agent for the vendor or alleged lien holder. He signed the bill of sale as "constable and agent." It might well be said of the constable in the present situation as it

was in *Gross* v. *Gates,* 109 Vt. 156 (194 Atl. 465), of a deputy sheriff holding an execution sale, ''As he must be disinterested and impartial, he lacks the usual characteristic of a private agent, which implies an interest favorable to one party and adverse to the other.''

The statute (1 Comp. Laws 1929, § 1020 [Stat. Ann.. § 5.72]), makes the constable and his surety jointly and severally liable on ''account of any misfeasance of the said constable in the discharge of, or failure of said constable to faithfully perform any of the duties of his said office.'' The surety is liable to all persons who are unlawfully injured by such misfeasance, whether accomplished by *virtute officii* or *colore officii. Kosowsky* v. *Fidelity & Deposit Company of Maryland, supra.* Misfeasance has been defined as, ''The performance of an act which might be lawfully done, in an improper manner, by which another person receives an injury.'' Bouvier's Law Dictionary (Rawle's 3d Rev.).

Disregarding, as we must, the distinction between acts *virtute officii* and *colore officii,* the test of the liability of a public officer's surety is frequently held to be, ''Would he (the public officer) have acted in the particular instance if he were not clothed with his official character, or would he have acted if he were not an officer? If he assumed to act as an officer—whether under valid or void process, or under no process whatever—the bondsmen should be held, as he is held, for they are sponsors of his integrity as an officer while acting· as such.'' 24 R. C. L. p. 965; *State, ex rel. and to use of Kaercher,* v. *Roth,* 330 Mo. 105 (49 S. W. [2d] 109); *Geros* v. *Harries,* 65 Utah, 227 (236 Pac. 220, 39 A. L. R. 1297).

If we accept the above test and apply it to the present case, as appellant contends we should, then the conclusion reached by us will be contrary to that

arrived at by the trial court. The fact that Altman was a constable and so signed himself in the bill of sale is a material point. He assumed to be acting officially, and this fact was the basis for the confidence of the parties in his acts that enabled the fraudulent sale to be perpetrated. "An official act is an act done by the officer in his official capacity under color and by virtue of his office." *Bostatter* v. *Hinchman,* 243 Mich. 589, 594, and authorities cited therein. The purchaser was aware that a bill of sale signed by a constable would be recognized by the department of State as valid evidence of a transfer of title. We therefore believe that Altman would not have acted in this particular instance if he were not clothed with his official character. It was the latter that enabled the illegal sale to be consummated.

Although the question of appellant's capacity to sue is raised in appellee's brief, it being contended that plaintiff cannot maintain his action against this defendant because of lack of privity between them, this question was not raised in the trial court, and, therefore, comes too late to be passed upon here. *Peterson* v. *Cleary,* 257 Mich. 640.

The case is reversed and remanded for entry of judgment in accordance with the verdict of the jury. Appellant will recover costs of both courts.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.